# Williams *v.* Anniston Electric & Gas Co.

## *Action for Death of Servant.*

(Decided Dec. 16, 1909.  51 South. 385.)

1. *Master and Servant; Injury to Servant; Negligence; Presumption.*—As between a master and a servant no presumption of negligence arises from the mere fact of an injury, even where a highly dangerous instrumentality is employed, such as electricity, and the servant is injured thereby.

2. *Same; Care Required.*—The measure of care required of a master in conserving the safety of his servant is that degree of care which careful and prudent men exercise in their own affairs, or the care and diligence which a man of ordinary care and prudence, would exercise for his own protection, or the protection of his property.

3. *Same; Dangerous Instrumentality.*—The degree of care which a master is required to exercise for the safety of his servant must be proportionate to the dangerous nature of the means, instruments and machinery used.

4. *Same; Duty to Warn.*—A master is under no duty to warn where there is no apparent reason to anticipate danger from the use of an electric lamp or fan by employes working inside a boiler.

5. *Same; Instruction.*—An instruction in an action for the death of a servant that the law under which the suit was instituted applies to all persons who employ labor, whether farmers, merchants, mechanics or corporations, was not prejudicial to plaintiff.

6. *Same; Liability Act.*—Where the action was for the death of a servant from an electric shock while working inside a boiler, charges asserting that mere knowledge of the defect, if there was a defect, does not constitute negligence; that the jury could not find for plaintiff on account of the defect in electric wires connected with the lamp or fan used in the boiler, if there was such a defect, unless it arose from or had not been discovered by reason of the negligence of the defendant, or of the person intrusted by the defendant with the duty of seeing that the works or wire was in proper condition, and if the jury were reasonably satisfied that there was no danger in the electric lamp or wire until the lamp or globe became broken, defendant would not be negligent nor liable for injuries resulting from the breaking of the lamp until it had reasonable opportunity to repair the same, were in conformity to the Employer's Liability Act and not erroneous.

7. *Same*—Charges hypothesizing the defendant's nonliability if plaintiff's death resulted from unexpected events not reasonably to be provided against were proper.

[Williams v. Anniston Electric & Gas Co.]

8. *Same; Incidental Risks.*—A charge that the master is not an insurer of the safety of the servant against risks incidental to the business, was not rendered erroneous by failure to qualify the word "incidental" by the word, "ordinarily."

9. *Same.*—Where decedent was killed by an electric current flowing from wires attached either to an electric light globe or an electric fan used by him in connection with his work inside of a boiler, and there was evidence tending to show that at the time of the death, intestate had his hand in contact with part of the then broken electric lamp charged with the current, and that in coming out of the boiler a part of his body rested on or touched the wire conveying current to the fan, thus making a circuit to his body and causing his death. charges exempting defendant from liability in case intestate would not have been injured, but for the breaking of the electric light globe, which defendant had no opportunity to repair, were proper.

10. *Same; Evidence.*—Where the action was for the death of a servant by electricity, it was incompetent to show that one W. dropped the servant's body and ran away as tending to prove that the body was electrified.

11. *Charge of Court; Witness Showing; Weight.*—An instruction that the statement of what an absent witness would testify if present was entitled to the same consideration by the jury as if the witness had testified to such statement, was not improper.

12. *Evidence; Conclusion.*—Where the decedent was killed by an electric shock and the limit of voltage that could be conveyed to the fan and lamp used by him and not burn out the fuse and stop the fan or explode the lamp, was shown, and it was further shown that both the fan and the lamp continued to perform their respective functions after intestate's death without an increase of current, evidence that there was not more voltage on the wires than the limit previously testified to at the time intestate was killed, did not state a conclusion of the witness, although the witness admitted that he had not taken the voltage scientifically.

13. *Appeal and Error; Harmless Error; Evidence.*—Where the action was for a servant's death from electrocution by coming in contact with wires connected with an electric light bulb and a fan in a boiler where the servant was working, the admission of evidence as to the motive, purpose or source of suggestion for putting them in the boiler was harmless to the plaintiff.

14. *Same.*—Where, by the subsequent testimony of the same witness, the subject was fully developed as far as the witness could testify the exclusion of a question asked by the plaintiff of the witness was not prejudicial.

15. *Trial; Objection to Evidence; Grounds.*—Unless the evidence is palpably inadmissible a trial court is not required to sustain objections to evidence not specifying the grounds.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

Action by Westley Williams, as administrator, against the Anniston Electric & Gas Company, for damages for the death of his intestate. Judgment for defendant, and plaintiff appeals. Affirmed.

The facts sufficiently appear in the opinion of the court.

The charges refused to the plaintiff, declared to exact too high a degree of care, are illustrated by the following charge: "(3) The court charges the jury that the law requires persons or corporations maintaining and operating wires over which deadly currents of electricity are conducted to exercise the highest skill and utmost care in regard to same at points where persons or employes are liable to come in contact with such wires, and at such points perfect insulation and protection is required by law."

Charges illustrating the other matter discussed in the opinion are illustrated by the following: "(4) The court charges the jury that if they believe from the evidence that Willie Williams was killed by coming in contact with an electric current conveyed along the wires of defendant, and that he was at a place where his duties required him to be, this would be prima facie evidence of defective insulation and of the negligence of the company maintaining the wires."

The following charges were given at the instance of the defendant:

(A) "The court charges the jury, unless there was danger or reason to believe that there was danger in using the lamp or fan in the drum of the boiler, there was no duty on the defendant to warn Willie Williams."

(B) "The court charges the jury that the law under which this suit was instituted applies to all persons who employ labor, and is as applicable to farmers, merchants, and mechanics, as to corporations."

(C) "The court charges the jury that mere knowledge of the defect, if there was a defect, does not constitute negligence."

(H) "The court charges the jury that they cannot find the issues in favor of the plaintiff, on account of the defect in the wires connected with the lamp or fan used in the boiler, if there was such defect, unless such defect arose from or had not been discovered by reason of the negligence of the defendant, or of the person intrusted by the defendant with the duty of seeing that the said cord or wire was in proper condition."

(K) "The court charges the jury that, if they are reasonably satisfied from the evidence that there was no danger in the electric lamp or wire supplying the same until the lamp or globe thereof became broken, the defendant would not be negligent, and would not be liable for injuries resulting from the breaking of said lamp until it had had a reasonable opportunity of remedying or repeairing the same."

(D) "The court charges the jury that, if Willie Williams came to his death by reason of something which was unexpected and could not reasonably be provided against, the plaintiff cannot recover."

(E) "The court charges the jury that, if plaintiff's intestate came to his death by reason of a mere accident, the plaintiff cannot recover."

(F) "The court charges the jury that the employer does not insure his employes against risks, and risks incidental to the business the employer does not assume, and these risks must be borne by the employe himself."

(G) "The court charges the jury that the statement admitted in evidence as to what H. B. Williams would testify, if present, is entitled to the same consideration by the jury as if the said Williams had testified to such statement on the witness stand in the presence of the jury."

(O) "The court charges the jury that, even if they should be reasonably satisfied from the evidence that the plaintiff's intestate came in contact with the wire supplying the electric lamp which he had in his hand and that the electric current from such wire caused his death, but that he would not have been injured by said current but for the breaking of the globe, and that the defendant had not had an opportunity of repairing said lamp after the same had been broken, the defendant would not be liable in this accident, under the second count of the complaint."

(P) Same as O, as applied to the fourth count.

(Q) Same as O, as applied to the third count.

(U) "The court charges the jury" etc., same as O, as applied to the fifth count.

WILLETT & WILLETT, for appellant.   The court erred in sustaining objection to the question seeking to elicit the fact that Wright dropped the body of plaintiff's intestate on catching hold of it and ran away.—*A. C. R. R. Co. v. Bullard,* 47 South. 578.   The court erred in permitting the witness Reed to show the voltage in the manner attempted.—*Bir. R. & E. Co. v. Jasper,* 136 Ala. 279; *McCutchins v. Loggins,* 109 Ala. 457; *Reeves' Case,* 96 Ala. 33; *Bailor's Case,* 101 Ala. 488; *Tapia's Case,* 94 Ala. 236; *Southern C. & C. Co. v. Swinney,* 149 Ala. 405.   The court erred in permitting testimony as to the purpose of putting the fan in the boiler, and as to who suggested that it be placed there.—*Decatur C. W. M. Co. v. Mehaffey,* 128 Ala. 244; *Ala. M. R. R. Co. v. Jones,* 114 Ala. 519.   The court erred in permitting the hypothetical question to Dr. Brothers, as there was no evidence in the case that Williams had a weak heart.— *McDonald v. Harris,* 131 Ala. 259; *Mobile L. I. Co. v. Walker,* 58 Ala. 295; *Bir. R. & E. Co. v. Butler,* 135 Ala.ˮ

388; *Parrish v. The State,* 139 Ala. 43. The charges requested by the plaintiff should have been given.—42 South. 875; 114 N. C. 203; 54 W. Va. 395; 173 Mo. 564; 1 Joyce on Elec. 738; 24 Ky. L. R. 1443. The court erred in giving the charges requested by the defendant. —Authorities supra. The servant does not assume risks created by the master's negligence.—*A. G. S. v. Brooks,* 135 Ala. 401. Counsel discuss motion for a new trial.

KNOX, ACKER, DIXON & BLACKMON, for appellee.—The court did not err in admitting evidence of the amount of voltage on the wires at the time of the accident, nor was the evidence, as admitted, a conclusion or opinion. —*S. L. & S. F. R. Co. v. Cash Grain Co.,* 50 South. 81. Besides, the witnes had previously testified to this fact without objection. The admission of testimony as to why the fan was put in and who suggested it, if error, was without injury. The plaintiff's objection to the hypothetical question was general.—*Braham v. The State,* 143 Ala. 29; *Sanders v. Knox,* 57 Ala. 80. The plaintiff's complaint was framed under the Employer's Liability Act, and the charges requested by plaintiff were not hypothesized upon the same, while those given for the defendant, each stated the law within the case made by the complaint.

McCLELLAN, J.—The relation of master and servant existed, at the time of intestate's death, between intestate and defendant (appellee). Intestate was a youth 18 years of age, had lived many years in the city of Anniston, had attended Payne's University at Selma, and for ought that appears was ordinarily intelligent for his years. It was testified, by his father, that intestate had had no "experience in working around electric

plants before this." Intestate was engaged, just previous to his death, in helping a boiler maker "roll flues." The place of service was inside the boiler. It was dark and hot there, and the defendant had arranged an incandescent electric light and an electric fan for use therein. . Two wires transmitted the electric current, respectively, to the light and to the fan. While being used, or at least inside the boiler, the bulb was broken. The intestate seems to have started out of the manhole of the boiler, holding the socket part of the fixture, to which the cord was attached, in his hand. He was crawling, as it were, and in so doing crossed or was over the wire conveying electric current to the fan. At this point, as shown by some of the testimony, he was heard to moan or holloa, and was seen to sink down, or his supporting arm to give way. There was testimony tending to show that there were burned or seared spots or places on his arm and forehead or cheek, and other testimony tending to show that these spots were made from electrical contact, and Dr. Kelly testified that, in his opinion, the deceased came to his death from that cause.

The defendant's theory seems to have been that death ensued from heart failure, superinduced by overheating of one not inured to such labors, and to such labors in so close a place as was the boiler. Plaintiff opposed this by testimony tending to show intestate to have been sound in body. Dr. Brothers testified, for defendant, that sudden death many result from heart trouble, apoplexy, etc., among other causes; and that it was entirely possible for a weak heart to enhance the danger of sudden dissolution of one circumstanced and engaged as just indicated. There was no evidence, and no reasonable inference possible of drawal therefrom that intestate had a weak heart. He died, as stated, and the main

issues of fact on the trial to be and that were tried by the jury were, first, whether death found its proximate cause in contact with an electric wire, or to natural causes; second, if due to electrical contact, whether negligence, for which the defendant was accountable, infected the cause. The jury's conclusion on the facts exonerated the defendant.

As we gather it from the brief for appellant in connection with special instructions, the respective giving or refusal of which are the bases for many of the errors assigned, the more important insistence is, when reduced to legal formula, that where a highly dangerous agency is employed by a master and one is injured thereby, even though that one stand, at the time of injury, in the relation of a servant to that master, the fact of injury from such an agency raises the presumption that negligence affected the result and thereby casting on the master, impleaded by the injured servant or his personal representative, the burden of acquitting itself of negligence presumed. The contention cannot be approved, for it is settled with us that, as between master and servant, no presumption of negligence arises from the mere fact of injury.—*L. & N. R. R. Co. v. Fitzgerald*, 161 Ala. 397, 49 South. 860, and authorities there cited; *Western S. C. & F. Co. v. Cunningham*, 158 Ala. 369, 48 South. 109; *Chamberlain v. Sou. Ry.*, 159 Ala. 171, 48 South. 703. In the *Cunningham Case, supra*, it was of course properly ruled that attending circumstances, otherwise than direct positive proof of negligence may be shown that will, in connection with the fact of injury, justify the imputation of negligence, for which the master is responsible, for injury to a servant and, hence, thereby carry the burden assumed by the servant or his personal representative in his essential averment of negligence as the proximate cause of the injury. The

court below observed the stated doctrine in dealing with special instructions discussed in brief for appellant, and, in consequence, committed no error in declining to apply to the case the indicated theory of law pressed for plaintiff (appellant).

The measure of care required of a master, in conservation of the servant's safety in his service, is "that degree of care which very careful and prudent men exercise in their own affairs"; or "the care and diligence which a man of ordinary prudence, engaged in a like business, would exercise for his own protection and the protection of his property." A higher degree of diligence and care is not required. The prudent man's care and diligence, likewise circumstanced, is the standard.—1 Labatt, §§ 14, 15, and notes citing our decisions. And it seems, also, undoubtable that, within the standard set down above, the degree of care "must be proportionate to the dangerous nature of the means, instruments, and machinery used."—1 Labatt, § 16, and authorities digested in notes thereto. It follows that the refusal of special charges requested by plaintiff wherein a higher degree of care than that defined was exacted of this master was not error.

All of the special charges refused to plaintiff, and as to which errors are urged in brief, fall within the two principles stated before, viz., that there is no presumption of negligence from the mere fact of injury, and that the care and diligence required is not the highest or utmost.

Charge A, given for defendant, deals with the duty to warn. We can see no fault in it. If no reason whatever appeared to anticipate danger from using the lamp or fan, and that is the legal effect of the instruction, surely no duty to warn arose. The very statement of the measure or degree of care due from master to servant

demonstrates that the master is not an insurer against injury. Besides, it is inconceivable that a duty to warn could exist without reason to anticipate danger. It is our duty to construe the instruction, if reasonably possible, so as to avoid putting the trial court in error.

Charge B, given for defendant, was an argument, and might well have been refused, but no prejudicial error could have resulted from the statement of the fact announced in the charge.

Charges C, H, and K, from the same source, are within the terms of the liability act, and to give them was not prejudicial error.

Charges D and E, given for defendant hypothesize the nonliability of the defendant if intestate's death was the result of unexpected, and not reasonably to be provided against, events or circumstances. Those by hypotheses exclude the ascription of the intestate's death to negligence for which defendant could be responsible, and hence were well given.

Charge F states the law often announced, and long prevailing here, that the master is not an insurer, nor is he responsible for consequences flowing proximately from the risk ordinarily incident to the business or service in which the servant is engaged. The word "ordinarily" is usually employed as qualifying the word "incident" or "incidental." However its omission in this charge does not render it bad.

Charge G conforms to what has been always considered the status of a "showing" made of what an absent witness would testify. The charge does not invade the jury's province. When this character of evidence is used it necessarily goes to the jury as if the witness had said what is written. That a view of the witness is denied the jury or a cross-examination is impossible may be often a distinct loss to the adversary, but certainly

those absences could not affect or alter the status, namely, that the "showing" be taken in lieu of the testimony of the witness to that effect. The charge is good law.

Charges O, P, Q, and U were proper when applied to the evidence. As appears, the tendency of the evidence, in the particular now important, was that intestate had his hand in contact with a part of the then broken lamp on which there was current, and that in coming out of the manhole, as before stated, a part of his body rested on or touched the wire conveying current to the fan, thereby connecting, through intestate's body as a conductor, the two currents. These charges predicate the exemption of defendant from liability, upon the hypothesis that the injury of intestate would not have resulted but for the breaking of the bulb, and that defendant had no opportunity of repairing the defect occasioned by the breaking of the bulb. This proposition is obviously sound. The defendant was not shown to be responsible, in any sense, for the breaking of the bulb. Its negligence vel non, after that happening as it was related to the hypothesis stated, must necessarily have rested on a breach of duty to discover and repair. No opportunity being afforded for that purpose, as was hypothesized, no breach of duty could have occurred.

We have disposed of all the assignments insisted on in brief, except those based on rulings in respect to the admission or rejection of evidence.

The fact, if so, that one Wright dropped the body of intestate and ran away was properly excluded. Wright's conduct may have been induced by other reason than that the body was electrified, as was the evident purpose of this matter. If so it was, Wright was the witness to state the fact, and not another who merely saw Wright's act.

The assignments relating to testimony admitted, over plaintiff's objection, in respect of the voltage on

the fan and lamp wires are without merit. The limit of voltage that could be conveyed to the fan and not burn out the fuse and stop the fan or explode the lamp was shown, as was, also, that both continued to perform their respective functions on this occasion without an increase of current after intestate's death. In view of this state of proof, we do not think a conclusion was uttered by the witness, notwithstanding he admitted not having taken, scientifically the voltage, when he said there was not more voltage on the wires than the limit already given in evidence. It was no more a conclusion than would be the statement that a bucket, already shown to have a full capacity of two gallons only, did not contain four gallons; or, instead, if more than two gallons were poured into it, it would run over. If it is granted that the motive, or purpose, and source of the suggestion, for the putting in the boiler or about there, of the fan and light were extraneous to the issues in the cause, they could not have been otherwise than harmless to the plaintiff. Both matters, it seems to us, were along the line of establishing the defendant's connection with the cause of intestate's death alleged in the complaint.

The bill recites that "plaintiff objected to this question (set out preceding the recital) ; the court overruled the objection. * * *" We are not apprised of the grounds of the objections, if any were stated. The questions were not so palpably illegal as to avail plaintiff on a mere general objection. He should have specified. There is no duty on a trial court to find and give point to a general objection to evidence that is not palpably inadmissible. *Rutledge v. Rowland,* 161 Ala. 114, 49 South. 461.

The remaining assignment complains of the refusal to permit a question to Dr. Brothers seeking to elicit

the fact (if so) that in electrocutions the current is applied through a wet sponge to the brain of the prisoner. The subsequent testimony of the witness, on the cross, shows clearly that what information or opinion, if any, the witness had on the subject of electrocution was fully drawn out, including the effect of electric current applied to the brain and its membranes.

The judgment is affirmed.

Affirmed.

SIMPSON, ANDERSON, and MAYFIELD, JJ., concur.