# Drew *v.* Western Steel Car & Mfg. Co.

*Injury to Servant.*

(Decided November 29, 1911. 56 South. 995.)

*Master and Servant; Injury to Servant; Negligence.*—The facts in this case examined and held insufficient to show such negligence on the part of the defendant as entitled the plaintiff to recover.

(McClellan and Somerville, JJ., dissent.)

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

Action by Arthur Drew against the Western Steel Car & Manufacturing Company, for injuries sustained while in its employment. Judgment for defendant and plaintiff appeals. Affirmed.

NIEL P. STERNE, and TATE & WALKER, for appellee. The court was in error in giving the affirmative charge because the plaintiff was entitled to have the question of defendant's negligence submitted to a jury.—*Smoot v. N. & M. R. R. Co.,* 67 Ala. 13; *City v. Harris,* 101 Ala. 564; 26 Cyc. 460; 1 Leb. 237; 56 Barb. 151. The company receiving the car had no right to rely on the presumption that another had inspected the car. It was its duty to inspect as a protection to its employees.— *Keith v. N. H. R. R. Co.,* 3 N. E. 29; *Guthridge v. M. P. Ry. Co.,* 4 Am. St. Rep. 392; Dresser, 217. As substantially analogous to the present case, we call attention to the case of *Neveu v. Sears,* 29 N. E. 472.

WILLET & WILLET, for appellee. Nothing appears in the bill of exceptions showing to what extent plaintiff was injured.—*B. R. L. & P. Co. v. Camp,* 49 South. 846. It was the duty of the trial court on the evidence to direct the verdict for the defendant.—*L. & N. v. Al-*

*len,* 78 Ala. 494. Negligence must be affirmatively es-
tablished by the evidence.—*L. & N. v. Fitzgerald,* 49
South. 860; *Chamberlain v. Southern,* 48 South. 703;
*Williams v. Anniston E. & G. Co.,* 164 Ala.; see also
179 U. S. 658, and 197 Pa. 257; 202 U. S. 159.

SOMERVILLE, J.—Plaintiff sued to recover for per-
sonal injuries, and the case was submitted on the fol-
lowing agreed statement of facts, which was all the evi-
dence:

"On the 15th day of March, 1909, plaintiff was an
employee of defendant. While engaged in the regular
course of his employment, he sustained injuries by
ammonia gas escaping from an ammonia tank, which
was being broken by the steam hammer of defendant.
Plaintiff's injuries confined him to his bed and incapaci-
tated him from working for three weeks, weakened his
eyesight, and caused him to be short-winded. This am-
monia tank had been taken from a pile of scrap iron on
defendant's yard, and the ammonia tank and scrap iron
had been on defendant's yard for about two years That
defendant was in the habit of purchasing for its rolling
mill large quantities of scrap iron, and had purchased
this ammonia tank as scrap iron, and it had been in
the scrap pile on defendant's yards, as stated, for some-
thing over two years; that the defendant had just be-
fore this accident broken up as scrap iron several other
ammonia tanks similar to the one which injured plain-
tiff and found nothing in them and nothing wrong with
the same.

"The tank in question was a 9-inch tank about 6½
feet long, and was charged with ammonia gas, a sub-
stance dangerous when allowed to escape. It was not
known, however, to defendant, or any of its agents or
employees that it was charged with ammonia gas or

any other substance. No inspection had been made of it; nor had any inspection been made of the other ammonia tanks which had been broken up as scrap iron. The ammonia tank in question had been taken from the scrap pile and placed on the steam-hammer anvil by order of Lee Coker, who was intrusted with superintendence in that respect by the defendant. The employees started to mash or break up this ammonia tank into scrap iron in the usual maner, by placing one end on the steam hammer anvil, with the other end resting on the sawhorse. The men who placed the tank on the sawhorse and anvil stepped back to get out of the range of the flying particles of iron, and the man operating the steam hammer struck the tank a light blow with the hammer. There was no noticeable effect from the blow, except a slight flattening of the end of the tank, but when the hammer was raised the ammonia or gas gushed out, shooting the tank out from under the anvil and around in a semi-circle to a point about 30 feet from the hammer, and on the opposite side from that on which it was resting when struck. The ammonia was scattered during the flight of the tank, and plaintiff was injured as a result of the escaping ammonia from the tank. The tank in question and others which were broken up were of the kind in which ammonia gas is ordinarily kept, although they were all purchased by defendant as scrap iron, to be used as scrap iron, and had been put in the scrap-iron pile on defendant's yards."

The complaint formulates the charges of negligence on the part of the defendant, through its superintendent in charge of the work, in the following terms: (A) He ordered the plaintiff and others to put said ammonia tank on said hammer, to be broken thereby, when he knew, or ought to have known, that the said tank was

[Drew v. Western Steel Car & Mfg. Co.]

dangerous and liable to explode or emit dangerous chemicals or gaseous substances when struck by said hammer. (B) He negligently had said tank placed on said hammer, to be broken thereby, without informing himself as to whether or not the same was liable to explode or emit dangerous chemicals or gaseous substances on being struck, of which dangerous nature of said tank the said Lee Coker knew, or ought to have known, of the same by the exercise of reasonable diligence. (D) He negligently ordered said ammonia tank to be placed on said hammer, to be mashed thereby, and negligently failed to examine the same, and to ascertain whether or not it was charged and liable to explode or emit dangerous chemicals or gaseous substances on being struck. (E) He negligently had said ammonia tank placed on said hammer, and the same struck by said hammer, when he knew, or ought to have known, that the said tank was likely charged with ammonia or other highly explosive substance, and that the striking of the same with the said hammer would likely injure those close by. (F) He negligently had said ammonia tank placed on said hammer, and the same struck by said hammer, without testing or inspecting the same to see whether or not it was charged, and without knowing whether or not the same had been so inspected or tested."

The record is silent as to what pleas were interposed by the defendant, and we presume the submission was on a plea of the general issue. The trial court gave to the jury the general affirmative charge for the defendant, and there was judgment accordingly. Thus the only question here is whether the evidence offered, there being no dispute as to the facts, was of such a character as to prima facie show negligence on the part of the defendant employer, or to permit any rational inference favorable to that view.

The general rule, often affirmed by this and other courts, is thus stated: "If the facts are disputed, or, if not disputed, the existence of negligence is an inference, which, as mere matter of discretion and judgment, may or may not be drawn from them, the question must be submitted to the jury."—*A. G. S. R. R. Co. v. Jones,* 71 Ala. 487. And, again: "In cases of doubt, where the facts are disputed, or where different minds may reasonably draw different conclusions from the same undisputed facts, the question of negligence vel non is a question of fact for the determination of the jury; but, when the facts are undisputed, and the inference to be drawn from them is clear and certain, it is a question of law for the decision of the court."—*L. & N. R. R. Co. v. Allen's Adm'r,* 78 Ala. 494.

The situation presented here is novel, and falls within the twilight zone, where law and fact intermingle, and the boundary between them becomes difficult to distinguish.

It is the nondelegable duty of the master to exercise due care and diligence to furnish reasonably safe and suitable materials and appliances to the servant who has to work with them.—*Tutwiler C. C. & I. Co. v. Farrington,* 144 Ala. 157, 168, 39 South. 898; *Southern Ry. Co. v. McGowan,* 149 Ala. 440, 43 South. 378; *Smith v. Watkins & Donelson,* 172 Ala. 502, 55 South. 611. The servant may assume that what is thus furnished is free from defect, and he is not required to exercise ordinary care to ascertain the defect.—149 Ala. 440, 43 South. 378.

A necessary corallary to the duty just stated is that materials which are apparently dangerous to use, by reason of some quality or condition, or which, though apparently innocent, may, by reason of antecedent conditions known to the master, harbor a hidden danger,

ought to be inspected by the master before they are delivered to the servant for his use, or before he is required to use them. Otherwise the master may assume that what is ordinarily harmless will constantly be so under similar forms and conditions, and even reasonable care and prudence would not require any special inspection.

Where the law has not prescribed the special conduct due from the master under the particular circumstances, no more is required of him than "that degree of care which very careful and prudent men exercise in their own affairs."—*Williams v. Anniston E. & G. Co.*, 164 Ala. 84, 51 South. 385. So negligence is the doing of something which a prudent and reasonable person would not do, or the omission to do something which a reasonable and prudent man would do, guided by those considerations which ordinarily govern the conduct of human affairs.—*Garlick v. Dorsey*, 48 Ala. 220.

In the application of these general principles to the particular facts in hand, we are aided by no Alabama decision, and from other states we find only two cases which seem to be approximately pertinent.

In *Purdy v. Westinghouse Co.*, 197 Pa. 257, 47 Atl. 237, 51 L. R. A. 881, 80 Am. St. Rep. 816, it was held that the use of barrels that had formerly contained oil, alcohol, turpentine, benzine, whisky, and other things, for the shipment of iron castings, does not render an employer liable for injury to an employee by explosion of a barrel caused by lighting a match to read the number on the barrel, done in the line of his service, when it is not shown that the employer had any knowledge that there was danger of an explosion in the use of such barrels. Says the court, per McCollum, J.: "There is no testimony in the case which shows that the defendant company, or any person connected with it,

knew that the barrels, used as above stated, were, under any circumstances, explosive; nor is there any testimony showing that such barrels are not commonly and ordinarily used for such purposes at manufactories, or that they are in any way unsuitable for such use. It seems, therefore, that the testimony introduced in support of the plaintiff's claim was justly held by the court below to be insufficient to charge the defendant company with negligence." It will be noted that the decision rests upon two propositions: (1) That in thus using these barrels the defendant was but conforming to common usage; and (2) that there was nothing to show any knowledge of their dangerous character, or of any likelihood of their explosion, since they were empty when bought. And, we may add, the danger was latent, and not discoverable by any practicable inspection. This decision is referred to in the text of 1 Labatt on Master and Servant, § 81, p. 217; and that able writer there says of it, by way of criticism, that he is of the opinion that "it was a fair question for the jury whether the employer ought not to have inquired more closely into the conditions, before allowing the appliances in question to become part of his plant."

In the case of *Neveu v. Sears,* 155 Mass. 303, 29 N. E. 472, the plaintiff, a stone mason, was dressing a stone furnished to him by his employer, the defendant, when the stone exploded and injured the plaintiff. The stone had been blasted with dynamite from the defendant's quarry, and there was evidence that, notwithstanding precautions taken at the quarry, unexploded dynamite had been found in the drill holes of some of the stones there quarried. It was held that the question whether defendant had exercised reasonable care in discovering and removing unexploded dynamite from the stone before delivery to the plaintiff was for the jury. Says

the court, per Baker, J.: "We are of the opinion that there was evidence for the jury that the defendant failed to use reasonable care to furnish safe material for the plaintiff's work. The jury were entitled to consider matters of common knowledge with the evidence, and to draw reasonable inferences from the whole. \* \* \* His (defendant's) employment of competent quarry-men, and his furnishing them with proper means of preventing any dangers consequent upon the use of dynamite, would not justify him in relying upon an actual want of knowledge that there had been carelessness at the quarry as an excuse for furnishing a dangerous stone for plaintiff's use, if, knowing all that had happened at the quarry, he would then have had reason to believe that unexploded cartridges might remain in the blocks removed to the storage ground, and in the stones split from them. \* \* \* The jury was left to say whether or not there was need of such an examination, upon the knowledge which the defendant had, or ought to have had, of what occurred at the quarry, and were instructed to hold the defendant only to such care as an ordinary prudent man with such knowledge ought to use with reference to stone coming from such a quarry."

It is apparent at a glance that *Neveu v. Sears,* in its material and decisive aspects, is very strongly analogous to the present case, if, indeed, there be any valid distinction at all. Here the material furnished to the injured man, to be broken by violent percusion, was a metal gas tank "of the kind in which ammonia gas is ordinarily kept." This tank bore upon its face the history of its former use as a receptacle for an explosive gas, which might be dangerous to human beings, if suddenly exposed to it in sufficient quantity. It may be that the weight of probability is that those who use such tanks for the storage of ammonia gas would exhaust their gas-

eous contents before discarding them for the junk pile. But this is a mere inference of fact, which might reasonably be subject to frequent exceptions. It certainly cannot be affirmed, as matter of law, based on any common usage or experience, that such a tank presumptively contained no harmful residue of its former noxious contents. Nor can it be affirmed, as matter of law, that the employer owed to his employee no duty to inspect a tank known to have once been dangerous, so far as his present use of it is concerned, by reason of imprisoned gas, and so to ascertain whether that danger had been removed, and the material made safe for his own present uses.

It is, of course, true that injuries from latent defects in machinery or materials, whose presence cannot reasonably be anticipated, and which cannot be discovered by careful inspection, impose no liability on the employer.—*L. & N. R. R. Co. v. Allen's Adm'r,* 78 Ala. 494. But it cannot be said that this is a latent defect in that sense, since the nature of the receptacle offered a rational basis for anticipation, and detection would, it may fairly be assumed, have resulted from an inspection by no means difficult or troublesome.

As already noted, the case of *Purdy v. Westinghouse Co., supra,* though of doubtful soundness, is distinguishable from the present case, and is not an apposite authority.

We have carefully considered the facts of the case, as well as the authorities and the able arguments presented by opposing counsel; and I cannot escape the conclusion, in line, I think, with the Massachusetts case referred to, that a jury might, in the application of their common sense and experience to the fact, have drawn legitimate inferences favorable to the negligence of the defendant. I therefore hold that the withdrawal

[Republic Iron & Steel Co. v. Woody.]

of that issue from the jury was error, for which the judgment should be reversed. Justice McClellan concurs in this view of the case, but Justices Simpson, Anderson, Mayfield, and Sayre hold that the evidence shows no breach of duty on the part of the defendant, either in fact or in inference, and that the trial court properly withdrew the case from the jury.

It results that the judgment must be affirmed.

Affirmed.

Simpson, Anderson, Mayfield, and Sayre, JJ., concur. McClellan and Somerville, JJ., dissent.


