(76 South. 17)

MATHEWS v. ALABAMA GREAT SOUTHERN R. CO. (2 Div. 625.)

(Supreme Court of Alabama. May 17, 1917.)

1. COMMERCE ☞27(5)—FEDERAL EMPLOYERS' LIABILITY ACT—APPLICATION.

The federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, §§ 8657–8665]) is only available to the employés it prescribes and defines, namely, those in the employment of interstate carriers who at the time of the injury are engaged in work or service immediately related and directly contributory to interstate commerce.

2. TRIAL ☞252(11)—REFUSAL OF REQUEST—FAILURE TO DISCHARGE BURDEN OF PROOF.

In an employé's personal injury action, plaintiff was not entitled to have issues submitted regarding which he had failed to discharge the burden of proof.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 603.]

3. MASTER AND SERVANT ☞256(1)—SERVANT'S INJURY — CONSTRUCTION OF COMPLAINT—WHAT LAW GOVERNS.

Where facts alleged in complaint for employé's injury from a coal chute did not make out a cause of action either under the federal Employers' Liability Act or the state Employers' Liability Act (Code 1907, § 3910), it will be regarded as declaring upon a breach of common-law duty unaffected by the saving clause of the liability acts.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 809.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. MASTER AND SERVANT ⬤⟿216(1)—SERVANT'S INJURY—ASSUMPTION OF RISK—NEGLIGENCE OF FELLOW SERVANT.**

At common law, an employé assumes the risk of injury resulting from the negligence of a fellow servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 567, 569.]

**5. MASTER AND SERVANT ⬤⟿265(1)—SERVANT'S INJURY—BURDEN OF PROOF.**

In an action against employer for personal injury, the employé has the burden of showing not only existence of the relation and that he was injured while in performance of his service, but that some negligence for which the master is responsible proximately caused the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877, 894.]

**6. MASTER AND SERVANT ⬤⟿265(5)—SERVANT'S INJURY — "PRESUMPTION" — "INFERENCE"—RES IPSA LOQUITUR.**

In an action by employé for injuries sustained while in his employer's services, there is no presumption of negligence, and the maxim res ipsa loquitur does not apply, the maxim operating in consequence of "presumption" and not "inference," and being a phrase often used in actions for injury by negligence where no proof of negligence is required beyond the accident itself which is such as necessarily to involve negligence. In the case of a "presumption" the given evidential fact is invested with certain consequences touching the further production of proof, and being an "inference" to which definite legal consequences attach. An "inference" is not a "presumption," but a deduction from facts proven.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 881, 898, 955.

For other definitions, see Words and Phrases, First and Second Series, Inference; Presumption.]

**7. NEGLIGENCE ⬤⟿134(2)—SUFFICIENCY OF CIRCUMSTANTIAL EVIDENCE.**

Negligence may be established without direct proof thereof by means of inferences from facts proven.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 272.]

**8. MASTER AND SERVANT ⬤⟿265(5)—SERVANT'S INJURY—QUESTION FOR JURY—NEGLIGENCE.**

In order to have an employé's personal injury action submitted to the jury, the employé must adduce evidence tending to show negligence as distinguished from the mere fact of injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 881, 898, 955.]

**9. MASTER AND SERVANT ⬤⟿286(25)—SERVANT'S INJURY—QUESTION FOR JURY—CIRCUMSTANTIAL EVIDENCE.**

The deduction of evidence serving to invite the jury to infer that employer's negligence characterized an employé's injury may be sufficient to warrant submission of the case to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1030.]

**10. MASTER AND SERVANT ⬤⟿286(25)—SERVANT'S INJURY—QUESTION FOR JURY—SUFFICIENCY OF EVIDENCE.**

In an employé's action for personal injuries, held, that there was no evidence of the employer's negligence in failing to discover or remedy a defect in a coal chute causing the injury, warranting submission of the case to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1030.]

**11. MASTER AND SERVANT ⬤⟿125(9)—SERVANT'S INJURY—USE OF COAL CHUTE—SERVANT'S KNOWLEDGE IMPUTED TO MASTER.**

A statement made by a third person to "some conductor" regarding dangerous use of a coal chute which caused employé's injury could not be imputed to the employer, since it was not shown that the conductor was so authorized that notice to him would bind the employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 251.]

**12. MASTER AND SERVANT ⬤⟿125(1)—SERVANT'S INJURY—USE OF COAL CHUTE—MASTER'S KNOWLEDGE.**

Unless there was something to bring notice to the employer or its authorized representatives that people were in the habit of lowering a coal chute door so as to create a dangerous condition, employer would not be liable for injuries resulting therefrom.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 243.]

**13. MASTER AND SERVANT ⬤⟿112(1)—SERVANT'S INJURY—OPERATION OF RAILROAD.**

It is a railroad company's duty to provide a reasonably safe roadway for the running of its trains and the performance of its employés' functions in that service.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 212, 213, 218.]

**14. MASTER AND SERVANT ⬤⟿231(1)—SERVANT'S INJURY—OPERATION OF RAILROAD—RIGHT TO RELY ON MASTER'S CARE.**

A railroad company's employés, unless otherwise advised, have a right to assume without inquiry or investigation that the company maintains a reasonably safe roadway.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 675, 677.]

Appeal from Law and Equity Court, Hale County; Charles E. Waller, Judge.

Action by J. A. Mathews against the Alabama Great Southern Railroad Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Harwood, McKinley, McQueen & Aldridge, of Tuscaloosa, and Thomas E. Knight, of Greensboro, for appellant. A. G. & E. D. Smith, of Birmingham, for appellee.

McCLELLAN, J. [1, 2] The appellant instituted this action against the appellee to recover damages for personal injuries suffered by him while in the service of the defendant. As finally amended, the complaint contained 15 counts. Those numbered from 11 to 15, inclusive, proceed upon the theory that the defendant's accountability was affected and governed by the provisions of the federal Employers' Liability Act, which, to quote in part our statement in L. & N. R. R. Co. v. Carter, 195 Ala. 382, 385, 386, 70 South. 655, 657, "is only applicable or available to the employés it prescribes and defines, viz. those in the employment of interstate carriers who at the time of the injury are engaged in work or service immediately related, directly contributory to interstate commerce." A first-hand consideration by the sitting members of the court of the very meager evidence bearing on the inquiry whether the

plaintiff was injured while engaged in a service related to interstate commerce or to instrumentalities related thereto (Carter's Case, 195 Ala. 385, 386, 70 South. 655), makes it entirely clear that the plaintiff was not so related to interstate commerce as to subject his cause of action to the government of the federal act (Ex parte A. C. L. R. R. Co., 190 Ala. 132, 67 South. 256). This consideration, of course, eliminates those counts as possible bases for the imputation of error to the trial court in consequence of the general affirmative charge given for the defendant at its request. In short, the plaintiff was not, under the evidence, entitled to have the issues tendered by the averments of those counts (11 to 15, inclusive) submitted to the jury; he having failed to discharge in any degree the burden assumed by the plaintiff through material averments of those counts.

[3, 4] Of the other counts (1 to 10, inclusive), those numbered 1, 2, 3, 4, 5, and 6 are, in consequence of their averments to be referred to the pleader's purpose to state a cause under the first subdivision of the Alabama Employers' Liability Act (Code, § 3910), which imposes liability for injury to an employé proximately caused by a defect in the condition of the ways, works, etc., of the employer. Count 7 ascribes the plaintiff's injury to the negligence of a superintendent, under the second subdivision of the state act (Code, § 3910). Count 8 cannot be referred for its purpose to either the federal or state Employers' Liability Acts. The instrumentality described therein—a "coal chute"—is not among the instrumentalities enumerated in the fifth subdivision of the state Employers' Liability Act (Code, § 3910). Not being drawn to state a cause of action under either of the Employers' Liability Acts, it must be regarded as declaring upon a breach of a common-law duty, unaffected by the saving effects of the liability acts. If the negligence alleged therein had been shown to have been committed by a servant of the common master, it is probable that the dereliction charged was that of a fellow servant, the risk of injury from the negligence of whom the plaintiff assumed, according to the common law recognized in this state. See Woodward Iron Co. v. Cook, 124 Ala. 349, 354, 27 South. 455; 9 Michie's Dig. Ala. Rep. pp. 914, 915.

Counts 9 and 10 each ascribe plaintiff's injury to the negligence of the engineer and the conductor, respectively, and are referable to the fifth subdivision of the Alabama Employers' Liability Act (Code, § 3910). As stated, the court below gave the general affirmative charge for the defendant on the whole case. The evidence has been reviewed with all care; and, from this consideration, we think the conclusion is unescapable that this action of the court was entirely justified by the failure of the plaintiff to discharge, in any degree, the burden assumed by him to show, at least prima facie, by tendencies of or inferences from the evidence that his injury was attributable for proximate cause to some negligent act or omission for which the defendant is accountable.

[5] Where the servant impleads the master for an injury suffered in the master's service, the plaintiff has the burden of proof to show not only the existence of the relation of master and servant, and that he was injured while in the performance of his service, but that some breach of duty, some negligence for which the master is responsible, proximately caused his injury. Proof of the fact of injury only, along with the fact that the relation of master and servant existed, will not suffice. L. & N. R. R. Co. v. Fitzgerald, 161 Ala. 397, 413, 414, 49 South. 860; A. G. S. R. R. Co. v. Brock, 161 Ala. 351, 357, 49 South. 453; Williams v. Anniston Elec. Co., 164 Ala. 84, 91, 51 South. 385; Am. Pipe Co. v. Landrum, 183 Ala. 132, 135, 136, 62 South. 757; Smoot v. Railway Co., 67 Ala. 13, 19; Clements v. Railroad Co., 127 Ala. 166, 174, 28 South. 643; L. & N. R. R. Co. v. Allen, 78 Ala. 494, 503, 504.

[6] The express holding in these cases is that the servant, suing the master for an injury received in the master's service, cannot be aided by a presumption that negligence characterized the cause of his injury; and so, because there is no presumption of negligence in such cases. Since the rule expressed in the maxim res ipsa loquitur takes effect and operates, in a proper case, in consequence of "presumption," and not "inference," it is clear that the rule of the maxim cannot avail a servant plaintiff to affirmatively show, at least prima facie, negligence as the proximate cause of his injury, without departing from the long-established rule in this state announced and applied in the above cited, among other, decisions. There is a marked distinction between "presumption" and "inference." Morford v. Peck, 46 Conn. 380, 385; Cogdell v. Railroad Co., 132 N. C. 852, 854, 44 S. E. 618; In re Hopkins' Will, 35 Misc. Rep. 702, 72 N. Y. Supp. 417; Bannon v. Insurance Co., 115 Wis. 250, 259, 91 N. W. 66; New Mexico v. Lucero, 16 N. M. 652, 120 Pac. 304, 39 L. R. A. (N. S.) 58, 61; Miller-Brent Lumber Co. v. Douglas, 167 Ala. 286, 290, 52 South. 414; Bower v. Bower, 78 N. J. Law, 387, 393, 74 Atl. 522. Bouvier, at page 898, defines the maxim as being "a phrase often used in actions for injury by negligence where no proof of negligence is required beyond the accident itself, which is such as necessarily to involve negligence." When the basis, operation, and effect of the maxim is given due consideration the importance of noting the distinction between "presumption" and "inference" is emphasized; for to confuse them would lead to surprising results and to the overthrow of firmly established rules in this jurisdiction. This language of the Supreme Court of New Jersey in Bower v. Bower, su-

pra, Justice Garrison writing, aptly, clearly indicates the distinction in mind:

"It is proper therefore to point out that the fundamental distinction between a presumption and an inference does not arise from any consideration as to the greater persuasive quality of the former, but solely from a rule of law by force of which in the case of a presumption a given evidential fact is invested with certain consequences touching the further production of proof. For the term 'presumption' denotes that a force is accorded by law to a given evidential fact whereby the duty of producing further testimony is affected. A presumption therefore is an inference to which definite legal consequences are attached. An inference, however persuasive, that does not affect the duty of producing testimony, is not a presumption."

In view of the fundamental distinction between a presumption (res ipsa loquitur) and an inference, and in view of the language employed in Chamberlain v. Sou. Ry. Co., 159 Ala. 171, 48 South. 703, it is a mistake to suppose that this court intended to apply the rule of the maxim, though expressly therein referred to, to a case where the servant impleads the master for the servant's injury while serving the master. The use there of the maxim as a vehicle of thought was intended to express the idea conveyed by the word "inference." Since inference is a deduction from facts proven, this expression in the opinion in the Chamberlain Case confirms the correctness of the interpretation just given it:

"We think the circumstances shown, in connection with the injury and accident, in the case at bar, were such as to authorize the jury to draw an inference of negligence on the part of the defendant in and about loading the car."

In So. Pipe Co. v. Caraway, 182 Ala. 671, 62 South. 527, it was expressly affirmed that proof of injury alone (which is the entire basis for the operation of the maxim) does not suffice to enable the servant plaintiff to discharge the burden of proof resting upon him to establish the negligence charged, and that negligence may be shown "without any direct proof thereof," meaning, undoubtedly, that the negligence imputed to the defendant might be shown by circumstances, might be inferred from the facts and circumstances disclosed by the evidence. Reference in Western Steel Co. v. Cunningham, 158 Ala. 369, 48 South. 109, discloses that the court declined to decide (see 158 Ala. 376, 377, 48 South. 109, of that report) the availability of the rule of the maxim in this class of cases.

[7] It appears from the opinion (158 Ala. 377, 48 South. 109) that the court confused the effect of the maxim with the distinct conception, manifestly sound, that negligence may be established without direct proof thereof by means of inference from facts proven. What was said in the Cunningham Case was invited by the citation and reference to the expression in the opinion in Tenn. Co. v. Hayes, 97 Ala. 201, 207, 12 South. 98. Consideration of these expressions in the Hayes Case discloses that the maxim was there employed as being synonymous with inference, because it is affirmatively stated that there was evidence before the jury from which the jury was authorized to "infer on the maxim res ipsa loquitur that the requisite care was not used." In other words, it affirmatively appears from the Hayes Case that all the court meant to say was that positive proof of the negligence was not essential to the discharge by a servant plaintiff of the burden resting on him to show, at least prima facie, the negligence charged, and that it was not the intention of the court to declare that proof of injury alone would authorize the presumption, as in the case of a passenger, that the injury suffered was the result of negligence. It is to be noted that the observations made in Graham v. Badger, 164 Mass. 47, 41 N. E. 61, and quoted in our Cunningham Case, as well as Mulcairns v. Janesville, 67 Wis. 24, 33, 29 N. W. 565, cited in our Hayes Case, are opposed to the declarations of this court in our Smoot Case, supra, and others in its line. The pertinent expression of the New Jersey court in Bien v. Unger, 64 N. J. Law, 596, 600, 46 Atl. 593, cited in our Cunningham Case, likewise opposed the doctrine of our Smoot Case, among others; and this is demonstrated by this approving quotation made in the Bien-Unger Case:

"The doctrine res ipsa loquitur simply calls upon the defendant, after proof of the accident, to give such evidence as will exonerate him, if any there be, and relieves the plaintiff of the burden of proving the nonexistence of an adequate explanation or excuse."

The decisions in the Hayes, Cunningham, Chamberlain, and Caraway Cases were correct and sound when it is considered that in each there was evidence from which the juries were authorized to infer that the negligence charged had been committed.

[8, 9] We therefore conclude, in accordance with long-established doctrine in this court, that a servant plaintiff in this character of action must, in order to be entitled to have the issues of his counts submitted to the jury, adduce evidence tending to show negligence as distinguished from the mere fact of injury, and that this he may do by an adduction of evidence which may serve to invite the triers of the fact to infer that negligence characterized his injury.

Since the foregoing considerations were set down, counsel for appellant have submitted a supplemental brief in which they refer to our recent decision in Bloom v. City of Cullman, 73 South. 85, 88,[1] where the doctrine of the maxim res ipsa loquitur was applied. There the action was for the death of a pedestrian in a public street, resulting from contact with an electric current. It was not an action by a servant against a master, as is the case here. In the Smoot Case, cited before, at page 19 of 67 Ala., it was expressly ruled—a holding often reaffirmed here—that where the action is against the master

[1] 197 Ala. 490.

for an injury to the servant the plaintiff must show negligence for which the master is responsible; that "inferences of it cannot be drawn from the fact of injury, and from the unfit and unsafe condition" of the car in that instance; of the "coal chute" in this.

[10] The evidence in this case shows beyond dispute that plaintiff was in the service of the defendant at the time he was injured; that he was in fact injured, and that the means of his injury was a "coal chute door" which, when down, extended over the track of the defendant's railway to such an extent as to overlap the space that would be occupied by engines or cars moving along the track by the coal chute. It further appears that this coal chute had not been used for about a year before plaintiff's injury; that another coal chute had been built next to it, adjacent to the track, and that this coal chute was the one the use of which had superseded the other coal chute. This door of the old coal chute was made to be let down when coal from it was being loaded on the tenders of locomotives and this door or "apron" was equipped with weights whereby, when not in use, it could be drawn back and close to the opening in the coal chute, and thus be out of the way of passing engines and trains over the defendant's track. On the occasion of plaintiff's injury, plaintiff was the foreman of a bridge gang. The gang used a pile driver, which was located on and attached to a flat car. This flat car was connected with a caboose and with other cars, and these cars were, on this occasion, being pushed by a locomotive along the track past the coal chute. When the car on which plaintiff was came opposite one of the doors or aprons of the unused coal chute, a part of the superstructure of the car was struck by one of the aprons of this unused coal chute, it being then in a hanging down position overlapping the track, which impact caused the superstructure of the pile driver car to strike and injure plaintiff. The plaintiff testified that he had frequently passed this coal chute on the work train, and that "he saw nothing wrong with the apron from time to time as he passed there"; and he further testified "that there was nothing to remedy" that he saw. There is no evidence whatever of any defect in the condition of the door or its appliances, unless the fact that it was down and struck the superstructure of the car on which plaintiff was, was efficient to show a defect in the condition of the door and its appliances. Under the rule that has been restated as from the Smoot Case and others, these facts were not sufficient to show negligence on the part of the defendant or its servants in failing to discover or to remedy the defect, if such there was, thus precluding any right in the plaintiff to have the issues tendered by counts 1 to 6, inclusive, submitted to the jury. Likewise, there was no evidence tending to show negligence

on the part of any employé of the defendant to whom superintendence was intrusted, according to the cause of the action declared on in count 7. Neither was there any evidence tending to show negligence on the part of defendant or its agents as declared on in the eighth count. Looking to the view that this count had sufficient support in the evidence to require its submission to the jury, the contention is made that this testimony of the plaintiff himself required the court to refrain from taking the issues tendered by the averments of the eighth count from the jury:

"The plaintiff further testified that one Mr. Pass had spoken to him about the apron hanging over enough to strike the window of an engine and knocking it off, and that said Pass also told him that some people were in the habit of using the apron as a path in going up to the sand house; that said Pass was not talking particularly to plaintiff about the apron, but plaintiff heard him say that he (Pass) had told some conductor that if they did not quit using that apron in that way it would hurt or kill somebody. Plaintiff further testified that said Pass did not tell [him] that he had better look out for his situation there."

[11, 12] Notice to the defendant of the condition of the door as indicated by these recitals of what Pass said to "some conductor" could not be imputed, since it is not shown that the conductor was so authorized as that notice to him would conclude the defendant or that he was in the discharge of any duty to the defendant when he was so advised. The necessary effect of what Pass is reported to have said to "some conductor" was to show that the letting down of the door was by "some people," not shown to be connected with the defendant, who were in the habit of using the apron as a path, thus expressly negativing, so far as that statement is concerned, the idea that the apron came down as the result of its own deficiencies. Unless there was something to bring notice to the defendant or its authorized representatives that people were in the habit of lowering this door so as to obstruct the free passage of trains over the track, it is manifest that the defendant could not be charged with negligence with respect to the obstruction thus created by "some people" who were not in the service or under the control of this defendant. The doctrine of the Davis Case, 92 Ala. 300, 309, 9 South. 252, 25 Am. St. Rep. 47, as quoted in brief for appellant, is not applicable under the evidence in this case; and for the further reason that the observations reproduced from that decision have reference to contributory negligence of the plaintiff as pleaded in that case.

[13, 14] Undoubtedly, it is the duty of a railway company to provide a roadway in all respects reasonably safe for the running of its trains and the performance of the functions imposed upon its employés in that service, and such employés, unless otherwise advised, have a right to assume, without inquiry or investigation, that the company has

discharged this duty; that the onus of inquiry or investigation in this respect is not upon the employé to see whether the company has performed this duty. While this is true, it by no means follows that without notice or opportunity to remove an obstruction that strangers have put about the roadway, the defendant will be held responsible as for negligence in respect to an obstruction that it is not shown had been in the way for a length of time sufficient to imply knowledge or notice of its presence. The observation and decision in Choctaw R. R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96, was predicated of the vital consideration, present there and absent in the case at bar, that the waterspout, which struck and killed McDade, was hung and maintained by the defendant at such an angle as to be "a constant menace to the lives and limbs of employés whose duties required them * * * to pass the structure." The fault of the defendant lay in its maintenance of a structure that endangered the lives of its employés who, in performing their service, were brought within the range of the hazard thus, in effect, affirmatively created by the employer.

Counts 9 and 10, both of which attributed negligence to the engineer and conductor, respectively, were likewise without support in the evidence. There was no evidence that either of those servants of the defendant, operating the pile driver train, had any knowledge or notice that this apron was down or was likely to come down so as to overlap the track or the train. The court was, hence, justified in concluding that the plaintiff had not discharged, in any degree, the burden of proof assumed by him under counts 9 and 10.

Our conclusion is that the defendant was entitled to the general affirmative charge, given at its instance. Under this view of the case, the rulings on demurrers to pleas and on the admission of evidence referable alone to the character or extent of the injuries received by the plaintiff become of no importance in this review.

The judgment appealed from is affirmed.
Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.