# Louisville & Nashville R. R. Co. v. Fitzgerald.

## Action for Death of Employe.

(Decided May 19, 1909.  49 South. 860.)

1. *Action; Joinder; Employer's Liability Statute.*—While a complaint for injuries to a servant under the Employer's Liability Statute, may ascribe the injury to concurrent breach of duty under two or more subdivisions of the Act in a single count, thus constituting a single cause of action, yet if the count imputes the injury suffered to two or more concurrent, coalescing breaches of duty the burden is on the plaintiff to sustain in proof not only the several negligences averred but also that they each concurred to produce the injury.

2. *Master and Servant; Injury to Servant; Negligence.*—The railroad company is liable to a servant, under subdivision 5, section 3910, Code 1907, for the negligent failure of trainmen to warn the engineer of a train following of an obstruction on the track, dropped from one of the cars of their train, if they know of such obstruction.

3. *Same; Contributory Negligence.*—If an engineer could have seen the obstruction on the track in time to have avoided striking it, and hence have avoided the injury, by keeping a diligent lookout required of him, and his attention is not necessarily bestowed on other duties, his failure to keep such lookout would render him guilty of contributory negligence barring a recovery.

4. *Same; Jury Question.*—At what distance an obstruction on the track could have been seen by an engineer if he maintained a proper outlook is a question for the jury.

[Louisville & Nashville R. R. Co. v. Fitzgerald.]

5. *Same; Negligence; Burden of Proof.*—In an action against a master for injuries to a servant the burden is on the servant to show negligence as to some act or omission in violation of duty.

6. *Same; Negligence; Evidence.*—In an action against the master for injury to a servant, proof of injury alone will not discharge the burden on the plaintiff to show negligence (as in the case of a passenger.)

7. *Same.*—To render a railroad company liable for injuries to an engineer resulting from the negligence of trainmen in charge of another train in allowing an obstruction to remain on the track, which had been dropped from their train, ahead of plaintiff's train, it must be shown that such trainmen had actual knowledge of such obstruction, and opportunity to acquire the knowledge is not sufficient; although actual knowledge in such case may be shown by fact and circumstances, or either, from which actual knowledge is a legitimate inference.

8. *Same.*—Where the action was for the death of the engineer caused by an obstruction on the track which was dropped from a train ahead of him, it was competent to show if a witness found anything the matter with any of the cars in the train ahead as tending to show the place from which the obstruction came.

9. *Evidence; Opinion Evidence.*—It being a matter of common observation as to which expert testimony was not necessary, it was competent to show by a non expert how far an obstruction could be seen.

10. *Same; Hearsay; Earnings.*—Testimony of the wife as to what the husband said were his daily wages or earnings is hearsay, and as such inadmissible.

APPEAL from Dallas Circuit Court.

Heard before Hon. B. M. MILLER.

Action by Mamie M. Fitzgerald, as administratrix, against the Louisville & Nashville Railroad Company, for damages for the death of her husband. The action is based on the employer's liability act (Code 1907, § 3910). Plaintiff had judgment, and defendant appeals. Reversed.

The case was tried on the following counts:

(11) "Plaintiff, as administratrix aforesaid, claims of the defendant the sum of $50,000 damages, for that on, to wit, the 27th day of March, 1907, defendant was operating a railroad from Selma, Ala., to Myrtlewood, Ala., and running and operating on said railroad trains of cars with locomotive engines attached thereto; that

on said day, while plaintiff's said intestate, J. D. Fitzgerald, was in the service or employment of defendant as a locomotive engineer, and engaged in or about the business of defendant, being upon a locomotive engine of defendant attached to a train of cars, which was being operated and run from Selma towards said Myrtlewood, said engine was derailed about one-quarter of a mile west of Thomaston, in Marengo county, Alabama, and as a proximate consequence thereof plaintiff's intestate, who was at the time defendant's engineer on said engine, and engaged in or about his duties as such engineer, was so injured that he died. Said engine was derailed, and plaintiff's said intestate killed as aforesaid, as a proximate consequence and by reason of the negligence of a person in the service or employment of defendant who had superintendence intrusted to him, whilst in the exercise of such superintendence, viz., defendant's conductor, one Ellis, negligently allowed a car to remain in a train of cars of which he was conductor and be run along the track of the same, the brake beam, or brake rod, or brake fastening, of which was broken and liable to drop upon said track, well knowing that the train upon which plaintiff's intestate was the engineer would soon pass along and over said track; and plaintiff avers that said brake beam, brake rod, or brake fastening did fall from said car upon said track, and the same was struck by the engine upon which defendant was engineer, and the same was derailed as aforesaid."

(12) Same as 11, except that the negligence is alleged to one Lasseter, the engineer in charge of the train from which the brake beam fell whilst he was in the exercise of his superintendence.

(13) Same as 11, down to and including the words "that he died" with this additional averment: "Plain-

tiff avers that said engine was derailed as aforesaid, and said intestate killed as aforesaid, as a proximate consequence of and by reason of the negligence of a person in the service or employment of defendant who had such superintendence intrusted to him, whilst in the exercise of such superintendence, viz., defendant's conductor, one Ellis, was operating and running defendant's train from Myrtlewood towards Selma, Ala., and in said train a car was being used that had a defective brake beam, or brake rod, or brake fastening, and the said conductor did negligently cause or allow the brake beam to fall from said car and upon the track, and there remain, and the engine and train which plaintiff's intestate was operating did strike said brake beam, brake rod, or fastening, and the said engine was derailed as aforesaid."

(14) Same as 13, except the negligence is alleged to Lasseter, the engineer.

(15) Same as 11, down to and including the words "of such superintendence," where they occur together therein, and adds the following: "Defendant's conductor, to wit, one Ellis, was operating and running defendant's train from Myrtlewood towards Selma, and in said train a car was being used that had a defective brake beam, or brake rod, or brake fastening, and the said conductor did negligently continue to operate and run such defective car, and the brake beam, brake rod, or brake fastening did fall from said car and upon the track of the defendant, and did there remain until the engine and train which plaintiff's intestate was operating did strike said brake beam, brake rod, or brake fastening, and the said engine was derailed as aforesaid."

(16) Same as 15, except that the negligence is alleged to Lasseter, the engineer.

(18) Same as 11, down to and including the words "that he died," with the following added averment: "Plaintiff alleges that said engine was derailed and plaintiff's intestate killed by reason and as a proximate consequence of the negligence of one Ellis, a person in the employment of defendant, in this: That said Ellis was at such time the conductor and had charge or control of a freight train of defendant, operating and being run at said time from Myrtlewood towards Selma upon the railway of defendant; that the brakebeam of one of the cars in said freight train, or brake fastening, or brake shoe, or brake rod thereof, had become broken or loosened, and had fallen off and from said car and onto the track of said defendant; that after the same had so fallen on and to said track the said freight train did, at Consul, about 5 1-4 miles from where said brake beam, or brake rod, or brake fastening, or brake shoe had fallen on said track, pass the passenger train of defendant, on the engine of which plaintiff's intestate was engineer, and although said conductor well knew that said brake beam, brake rod, brake fastening, or brake shoe had fallen on said track, and well knew that defendant's passenger train, on the engine of which plaintiff's intestate was engineer, would, after leaving Thomaston, necessarily run over and upon said track on which said brake beam, brake rod, brake fastening, or brake shoe had fallen, and although he had ample opportunity so to do, did negligently fail to so notify or warn plaintiff's intestate or other person in charge of said passenger train of the falling off of said freight train of said brake beam, brake rod, brake fastening, or brake shoe."

(19) Same as 18, except the negligence is alleged to Lasseter, the engineer.

The question to the witness Ford was: "State to the jury if you found anything the matter with either car in that freight train." The question was objected to by the defendant, and the objection overruled.

There was judgment for the plaintiff in the sum of $23,351.

MALLORY & MALLORY, GEORGE W. JONES, and J. MANLY FOSTER, for appellant. The demurrers to counts 18 and 19 should have been sustained.—Dressers' Employer's Liability, 338; *E. T. V. & G. v. Davis*, 75 Ala. 471. Our court has clearly defined what is due diligence.— *S. &N. A. R. R. Co. v. Williams*, 65 Ala. 78; *L. & N. v. Thornton*, 117 Ala. 281. Unless an engineer uses his ordinary faculties of sight and reason, he is guilty of contributory negligence—Lebatt M. & S. sec. 332, and cases cited; *N. & W. R. R. Co. v. Williams*, 49 Va. 165. It follows that the pleas of contributory negligence were good. Defendant was entitled to judgment notwithstanding the verdict, for the reason that count 1 was voluntarily taken out of the case and the other counts were unintelligible without count 1. The burden of proof is different where the action is by a servant for injury and by a passenger for injuries. We insist that the plaintiff failed to carry the burden required.— *Smoot v. M. & M. R. R. Co.*, 67 Ala. 13; *M. & O. R. R. Co. v. Thomas, Supra; Clements v. A. G. S.*, 127 Ala. 174; *Mary Lee C. & R. R. Co. v. Chambliss*, 97 Ala. 178; *L. & N. v. Allen*, 78 Ala. 503; *Patton v. R. R. Co.* 179 U. S. 663. The evidence of a defect carries with it no presumption of negligence. The plaintiff must not only show that a defect exists but must go further and show that it existed by reason of negligence on the part of the master.—*L. & N. v. Davis*, 91 Ala. 494; *C. & W. R. R. Co. v. Bradford*, 86 Ala. 574; *L. & N. Campbell,*

97 Ala. 114; *Tuck v. L. & N.*, 98 Ala. 150; 21 A. & E. R.
R. cases, 555; 152 Fed. 417. The injury must be shown
to have been the consequence of the negligence of the
master.—Authorities supra, and 48 N. W. 560; 25 Atl.
286; 51 L. R. A. 881. Unless it is shown to the contra-
ry by the evidence, an engineer is not a person in su-
perintendence when engaged in running his engine.—
*Freeman v. Sloss-S. S. & I. Co.*, 137 Ala. 485; *Culver v.
A. M. Ry. Co.*, 108 Ala. 330; *Dantzler v. DeBardelaben
C. I. & R. R. Co.*, 101 Ala. 311. Counsel discuss other
assignments of error not necessary to be here set out.

PETTUS, JEFFRIES & PETTUS, for appellee. The su-
perintendence contemplated by subdivision of the Em-
ployer's Liability Act is not necessarily that of super-
intendence of the injured person, but if the negligence
of such superintendence results in injury to any serv-
ant of the common master, the latter is liable under the
terms of the statute.—*K. C. M. & B. v. Burton*, 97 Ala.
240; *Dantzler v. DeBardelaben*, 101 Ala. 314; *Jones v.
R. & D. R. R. Co.*, 92 Ala. 218. That an engineer has
superintendence within the terms of the statutue de-
pends, of course, upon the facts in each case.—*Mother-
shed's Case*, 97 Ala. 261; Lebatt, sec. 681. A conductor
has superintendence always.—26 Cyc. 1377; Lebatt, p.
2036; *Chicago R. R. Co. v. Ross*, 28 U. S. 793. The
counts to which demurrers were interposed have been
passed on by this court in *Robinson Mining Co. v. Tol-
bert*, 132 Ala. 462. The averments measure up square-
ly, with the requirements of subdivision 5 of the statute.
—Lebatt, p. 2036 *Electric Ry. Co. v. Boylon*, 101 Ala.
488; *Chicago Ry. Co. v. Ross, supra; Woodward I. Co.
v. Herndon*, 114 Ala. 192. The court properly sustain-
ed demurrers to the pleas.—*Northern A. Ry. v. Shea*,
37 South. 796; *Osborne v. Ala. S. & W. Co.*, 135 Ala.

575; *L. & N. v. Bouldin,* 121 Ala. 197; *G. P. R. R. Co. v. Davis,* 92 Ala. 300; *Western Ry. of Ala. v. Russell,* 39 South. 311. In any event, the defendant had advantage of the same defense by other pleas to which no demurrers were sustained.—*N. C. & St. L. v. Bates,* 133 Ala. 452; *Reese v. Fuller,* 132 Ala. 282; *L. & N. v. Hall,* 131 Ala. 161. The court did not err in the admission of evidence as to the condition of the cars in a freight train.—*Jackson L. Co. v. Cunningham,* 141 Ala. 213. There was no error in excluding the amount of life insurance carried by the dead engineer.—*C. of Ga. Ry. Co. v. Alexander,* 40 South. 424. The charge of the court was correct.—*Decatur C. W. & M. Co. v. Mehaffy,* 128 Ala. 242. Counsel discuss charges refused, but without citation of authority. Defendant was not entitled to a judgment notwithstanding the verdict.— *Robinson v. Drummond,* 24 Ala. 178; *Anniston E. & G. Co. v. Elwell,* 42 South. 47; *Jones v. Vanzonot,* 7505 Fed. Case. Counsel discuss the question of damages and excessiveness of the verdict.

McCLELLAN, J.—J. D. Fitzgerald was an engineer in the employ of the defendant (appellant), and his run was between Selma and Myrtlewood. While en route, within his duty, from the former to the latter point, a short distance west of Thomaston, his engine struck a metal brake beam lying on the track, was derailed, and Fitzgerald was killed. The place from which the beam came may be assumed to have been a Pere Marquette car, No. 597, a foreign car, in a freight train of the defendant in progress from the west to Selma, and which train, opposing the train on which deceased was engineer, passed over the place whereat the beam was when the west-bound train struck it. Ellis was conductor of the east-bound freight train, and Lasseter was engineer thereof.

Counts 11 to 16, inclusive, and counts 18 and 19, were those on which the trial was had. Counts 11 to 16, inclusive, were intended to be drawn under the employer's liability act (Code 1907, § 3910), and each assumes to aver, in effect, a defect in the ways, works, machinery, or plant, but by express allegation ascribes the negligence, proximately causing the injury, to the negligence of either the conductor or engineer, respectively, of the freight train, while in the exercise of superintendence intrusted to him. None of these counts aver that the defect arose from, or had not been discovered or remedied owning to, the negligence of the master or of some person intrusted with the duty of seeing that the ways, etc., were in proper condition. It is doubtful whether the demurrers take the point, argued for appellant, that these counts are insufficient because of the absence of the indicated averment. Since a reversal must be entered for other reasons, it is not thought proper to decide the question. There is no merit in the other grounds of demurrer directed against these counts.

Each of the five subdivisions of the act, in connection with pertinent provisions of the last paragraph thereof purport to and do afford separate causes of action where the injury suffered was in consequence of any one of the causes defined in the act; but, while this is undeniably true, it has became settled here that the pleader may, in a single count of the complaint, ascribe the injury suffered to concurrent, coalescing breaches of duty under two or more subdivisions of the act, thereby constituting a single cause of action, and, having done so, he must, of course, sustain in the proof, not only the several negligences averred, but also that they each concurred to produce the injury complained of.— *H. A. & B. R. R. Co. v. Dusenberry,* 94 Ala. 413, 10 South. 274; *Armstrong v. Montgomery Street Ry.,* 123

Ala. 233, and authorities cited on page 246 of the opinion, 26 South. 349. This doctrine of the *Dusenberry Case*, as stated, does not conflict with that announced in *Clement v. A. G. S. R. R. Co.*, 127 Ala. 166, 171, 28 South. 643, among others, namely, that two separate causes of action under the act cannot be joined in one count, because the pleader averts a violation of that sound rule by the ascription of his injury to the operation and effect of concurrent, coalescing breaches of duty under the act.—*Armstrong v. Montgomery Street Ry.*, 123 Ala. 246 26 South. 349. It must and does follow from these principles that, if the count imputes the negligence causing the injury to two or more of the negligences described in the act, but does not aver that these negligences jointly caused the injury suffered, such a count would be objectionable as indicated upon the doctrine of *Clement v. A. G. S. R. R., supra.* On the other hand, if the count ascribes the cause of the injury to the joint causation of two or more of the negligences defined in the act, we are clearly of the opinion that each negligence must be as perfectly averred, within the requirements of the act, as if it alone was undertaken to be employed in the statement of a cause of action.

We think this ruling is sound on reason, and supported in authority by *Bridges v. Tenn. Coal Co.*, 109 Ala. 287, 292, 19 South. 495. The Bridges Case grew out of an injury to an engineer. We adopt the language of the court therein, descriptive of the matter and declarative of the law in the premises: "The fourth count was framed in part under the third subdivision and in part under subdivision 1, supra. This count avers that deceased was injured while conforming to the orders of one McKenzie, whose orders he was bound to obey. The count then proceeds to allege that the dam-

age of conforming to the order, which was simply to use the engine, consisted in the defective boiler. We are of the opinion that subdivision 3, supra, was not intended to provide a cause of action in a case which is properly embraced within subdivision 1, supra." We interpret this decision as affirming, as presently important, that one subdivision cannot be borrowed in part to construct a cause of action therefrom by the supplementary averment of a character of negligence defined in another subdivision. If a contrary course were permissible, one effect, among others unallowable, would be to permit a plaintiff to recover on a count that contained only selected elements of different subdivisions of the act, and not all the elements essential to perfectly state a cause of action under any one of the subdivisions from which the pleader borrows some of his averments.

. Another equally serious objection to such a course is the necessarily consequent confusion and multiplication of issues under a single count. The policy of our system of pleading is opposed to any process whereby perspicuity and conciseness, leading to a definite issue, in each count, are sacrificed. Counts 11 and 16, inclusive, are of that class wherein a single cause of action is undertaken to be stated as upon the joint causation of the negligences described, and for which the master's liability is declared, in subdivisions 1 and 2. The defective car is clearly within the first, and the omission imputed to the superintendent is, of course, within the second, subdivision. These averments are conjoined in each count, and are so interwoven in statement there can be no doubt that their object was to claim liability for a defect and for negligence attending a superintendency thereof. But in averring the defective condition the necessary allegation before indicated

was omitted. Having undertaken to ascribe the injury to the joint causation stated, we are of the opinion that the averment of each of the two elements of concurring negligences should have conformed to the legal necessities of the act, and hence that the count should have contained the averment that the defect arose from, or had not been discovered or remedied owing to, the negligence of some person within the pertinent provision of the last paragraph of the act.

It is perhaps unnecessary to add that counts 11 and 16, inclusive, do not assume nor purport to predicate liability upon the negligent breach of any common-law duty owing by the master to Fitzgerald.

Counts 18 and 19, respectively, undertake to fix liability on the theory of a breach of duty by one within the provisions of subdivision 5 of the liability act, in that, though knowing that a brake beam from one of the cars in a train of which he, the conductor or engineer, as the case may be, was in charge or control, had fallen to the track over which intestate's train must soon pass, negligently failed to warn the intestate or other person in charge of such oncoming train of the fact so known. The demurrers to these counts take the points (1) that it does not appear to have been the duty of the conductor or the engineer, as the case may be, to so warn defendant's employes in charge of the west-bound train, and (2) that, in consequence, it does not appear that the omission charged was negligence imputable to defendant. It is to be noted that the counts do not, in terms, affirm the duty alleged to have been breached. The duty, if averred, must be drawn from the status described and from the alleged fact that the conductor or engineer, as the case may be, was in charge or control of the train from which the obstacle fell to the track. The legal inquiry is whether,

as a matter of law, the omission charged can be pronounced to have been without the scope of the duty of a person in charge or control of a train from which a dangerous (we assume for the purpose of decision of this question only), to the operation of other trains over the track, obstacle falls, and this with full knowledge of such person so in charge or control of the train from which the substance came.

It is common knowledge that the safe, convenient, and expeditious operation of trains depends almost entirely upon the skill, care, diligence, and fidelity of employes whose duties relate to that phase of the common carrier's business; and it is equally within common knowledge that such safe, convenient, and expeditious operation of trains cannot be accomplished otherwise than by proper regard on the part of the employes in charge or control of one train for the safety of another train, the safe progress of which over the common track must be and is controlled, in many instances, by the location of and the effect upon the common track, and conformity to orders of operation by the operatives, of one train as related to another train. While these observations are most general, and are so intended, they necessarily include, in the consideration of such a question as is now presented for decision, the factor that in ascertaining and declaring duty vel non, under such circumstances as in this instance appear, the employe in charge or control of a train cannot be limited in scope of duty solely to the train over which, in fact, his charge or control alone extends. The effect of the insistence for appellant, in this connection, would deny any influence to that consideration or factor. Indeed, if the insistence were sustained, we are unable to see, unless otherwise expressly imposed, any duty on a trainman to acquaint an oncoming train's operatives of

the fact that a freight train had rendered a bridge so unsafe as that the latter would be destroyed if it were driven upon the defective structure. Surely such a result is not desirable, either from the standpoint of the carrier or that of those on an endangered train. From the standpoint of the latter, that result would apply a rule of extreme inhumanity.

We are of the opinion that the factor indicated before must comprehend within the duty imposed by the master on the alleged derelict servant the obligation to warn another operative of a condition of danger or peril to him, or to the common master's property in his care and charge, where such dangerous condition is created by the operation, or results from the operation, of the train over which such charged servant exercises control, and of which fact of created dangerous condition the charged servant is informed. The ligament binding such obligation to that compassed by charge or control over the train in the charged servant's care consists in the interdependence of care, diligence, and fidelity for safety existing between servants immediately directing the movement of trains on the roadway of the master. A conductor whose train has become derailed unquestionably could have no higher duty, independent of express rule to that effect, than to take proper steps to avert the collision of an approaching train with his stricken train, and the resulting destruction of what remains of his train on the track uninjured and in his charge or control. No difference in principle can be found to distinguish such an obligation from the necessity suggested obligation to avert harmful consequences to property of the master and to the persons on the oncoming and endangered train, rendered possible by the falling from his train upon the common track in the rear of a part of a car or other endangering ob-

stacle. In the one instance the servant's train is in danger, while in the other, with knowledge, something from his train has fallen to the endangering of other property of the master and of persons physically associated with the property. In the one, his train totally obstructs passage over the track, while in the other something connected originally with his train has fallen to the track, requiring as within his duty, if known soon enough thereafter and not inconsistent with the safety and proper operation of his train and of others in progress over the road, that he reclaim the fallen part of his train. We hold, therefore, that the stated objections to those counts were properly ruled below to be not well taken.

A large number of the errors assigned arise out of rulings of the court sustaining demurrers to many pleas of contributory negligence. The court below applied the principles announced in *Western Ry. v. Russell*, 144 Ala. 142, 39 South. 311, 113 Am. St. Rep. 24, and thereby compelled the defendant to amend its numerous pleas of this kind so as to aver the obvious character of the obstruction on the track and the appreciation of the danger to intestate's train attending the presence of such an obstacle before it, and in consequence exempted Fitzgerald from the imputation of negligence contributory to his injury because of his failure to see, at the earliest possible moment before his engine reached the obstruction, the obstacle as he would have done had he kept a cautious lookout. The Russell Case dealt with a defective track. In *L. & N. R. R. Co. v. Bouldin*, 110 Ala. 185, 20 South. 325, among others, it was ruled that a foreign substance, without other connection with the track than its proximity to it, was not a defect in the condition of track or roadway. The Russell Case is unquestionably sound in expression of the rule that

unless otherwise particularly informed, or unless the defective condition of the track is obvious, an engineer has the right to assume that the track is in proper, safe condition. To qualify this right he must be particularly, not generally, warned of the defect in the track and the danger or peril arising from the defect, unless the defect and danger are apparent. But this rule is not applicable here, for the reason that the dangerous condition was not the result of a defect in the track, but was produced by an obstruction on the track. By the statute (Code 1896, § 3440) as construed in *South & N. R. R. v. Williams,* 65 Ala. 74, *L. & N. R. R. v. Thornton,* 117 Ala. 281, 23 South. 778, and *E. T., V. & G. R. R. v. Bayliss,* 74 Ala. 150, 161, and 75 Ala. 466, 472, it was held, to quote the last-cited decision, that the "engineer, while attending to the other wants of his train, must be constantly on the lookout for obstructions; and he meets this requirement when he bestows on the service that steady, regular care and watchfulness which his other duties allow a very careful and prudent person to give to it."

The alterations of this statute, at different times, have not affected to render uninfluential the construction given it by the cited cases, among others. The duty of the engineer, in respect of the lookout, being as shown, it is a necessary consequence that the rule of assumption, declared in *Russell's Case,* could not be availed of by him in order to exculpate himself from negligence inhering in a breach of his duty to keep the defined lookout. Under the duty defined, Fitzgerald should have been maintaining the lookout required as he deft Thomaston with his train and approached the obstruction on the track, unless he was then "attending to the other wants of his train." If his attention to such other needs was not then being bestowed, and by

keeping the diligent lookout required, he would have discovered the obstruction and its dangerous character in time to have stopped his train, before striking it, by the skillful application of the appliances at hand for that purpose, then, in our opinion, he was guilty of contributory negligence, barring a recovery for his injury. At what distance from the object such lookout would have afforded him, through his observation, the information that an obstruction was on the track and of its danger to his train, as that quality would have appeared to a careful and prudent man in his position, must, of course, be a question of fact. As appears, we have briefly treated the question raised on the rulings on the pleas from the standpoint of the relation existing between defendant and its engineer—a very different status from that involved when an injured trespasser is the complaining party, as to whom there is, of course, no duty save to avert injury after the discovery of the trespasser's peril. We need not specify the departures from the conclusion above stated made by the court in its rulings on the sufficiency of the numerous pleas, since on a retrial, for which we must remand the cause, these pleas, if interposed in substance, may be conformed to the views expressed in this connection.

As we understand the evidence, there was an entire want of proof of negligence in the failure to discover the defective condition of the Pere Marquette car before the brake beam fell from it to the track, or that it was defective an appreciable time before it fell from the car, or that Ellis or Lasseter negligently caused or allowed it to fall on the track. In such case, where the injury is suffered by a servant, the burden is on him, if he would recover against the master, to show some act or omission in violation of duty, and hence negligence. Proof alone of the fact of injury will not,

as in the case of passengers, suffice to discharge this burden.—*Smoot v. M. & M. R. R.,* 67 Ala. 13; *L. & N. R. R. v. Allen,* 78 Ala. 494; *Clements v. A. G. S. R. R.,* 127 Ala. 166, 28 South. 643; *L. & N. R. R. v. Davis,* 91 Ala. 487, 8 South. 552; *Tuck v. L. & N. R. R.,* 98 Ala. 150, 12 South. 168. Unless, on trial to be had, there is evidence tending to show negligence, within the rule stated, before or at the time the beam fell to the track, it is evident that the only possible lead to a recovery by plaintiff must be according to the theory of counts 18 and 19, provided, of course, contributory negligence on the part of Fitzgerald did not intervene to forbid a recovery. The averment that Ellis or Lasseter, as the case may be, knew of the fact that the beam had fallen to the track and with such knowledge failed to warn as charged, necessitates proof of actual knowledge of the fact alleged, not mere opportunity to have acquired such actual knowledge. But actual knowledge may be shown by facts and circumstances, or either, "from which the fact of actual knowledge is a legitimate inference."— *Sou. Ry. v. Bush,* 122 Ala. 470, 487, 26 South. 168.

Under the principle declared in *Jackson Lumber Co. v. Cunningham,* 141 Ala. 206, 37 South. 445, the question propounded to the witness Ford was proper, as tending to elicit evidence of the place from which the beam, causing the derailment, came.

We do not think the allowance of the question to the witness Green, seeking his opinion of how far the brake beam involved could be seen on the track, under the circumstances hypothesized, was improper. The posture of the beam on the track would necessarily affect the distance it could be seen; but the defendant could have tested the witness along this line by a cross-examination of him. Besides, it is insisted for appellee, and doubtless soundly, that the matter inquired about was

[Gray Eagle Coal Co. v. Lewis.]

within common observation, and was not the subject of expert opinion, and, if so, no predicate was necessary in order to admit Green's opinion, if such he had.

We are of opinion that the testimony of Mrs. Fitzgerald, stating what intestate had told her was the amount of his daily wages, was hearsay, and not admissible.

These considerations dispose of the questions urged in argument for appellant, and denote our view that, in the particulars indicated, errors prejudicial to appellant occurred on the trial. The judgment is therefore reversed, and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.