(89 South. 293)

## TENNESSEE COAL, IRON & R. R. CO. v. SPICER. (6 Div. 395.)

(Supreme Court of Alabama. May 19, 1921.)

**1. Master and servant ⬅182(1) — Superintendence held created rendering neglect actionable under statute.**

The negligent failure of one intrusted by a master with superintendence to perform the duty of preserving master's servants from subjections to dangers incident to their service, to anticipate the possibility of intervening hazards, and to conserve the safety of servants while performing their service, is actionable under Code 1907, § 3910, subd. 2, creating liability for negligence of superintendent, though subdivision 1 refers to defects in ways, works, machinery, etc.

**2. Master and servant ⬅259(5)—Count held to charge negligent superintendence.**

Count for injuries to servant by falling from or through a scaffold, alleging that his injuries were proximately caused by the negligence of one who was in the employ of defendant, and who had superintendence intrusted to him, in that he suffered scaffold to remain in an unsafe condition as constructed of defective and unfit material, states a cause of action under Code 1907, § 3910, subd. 2, making master liable for negligence of one intrusted with superintendence.

**3. Master and servant ⬅116(2)—Scaffold held not within "ways, works, machinery, or plant."**

A temporary scaffold is not an instrumentality within the definition of Code 1907, § 3910, subd. 1, relating to liability of master for injuries by reason of defects in condition of "ways, works, machinery, or plant" connected with or used in the business of the employer.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Ways, Works, Machinery, or Plant.]

**4. Master and servant ⬅259(5)—Negligence of superintendent as to employee on scaffold sufficiently alleged.**

Count for injuries to employee from falling from or through a scaffold, based on negligence of one intrusted with superintendence under Code 1907, § 3910, subd. 2, need not allege that the performance of the duty intrusted to the superintendent would have resulted in plaintiff's discovery of the unsafety of the scaffold.

**5. Master and servant ⬅287(3) — Superintendence held for jury.**

In action for injuries to employee by falling from or through a scaffold containing a defective board, based on negligence of another employee in failing to discover defect in the board under Code 1907, § 3910, subd. 2, evidence that other employee was intrusted with superintendence under subdivision 2 held sufficient to take case to the jury.

**6. Negligence ⬅136(2)—Question for jury.**

Generally whether one has performed a duty to exercise reasonable care, diligence, and skill under certain circumstances is a question for the jury.

**7. Master and servant ⬅287(3)—Negligence of superintendent in failing to discover defect in scaffold held for jury.**

In action for injuries to employee by falling from or through a scaffold by reason of defective board, based on negligence of one intrusted with superintendence, under Code 1907, § 3910, subd. 2, in failing to discover the defect, evidence as to duties of the superintendent held sufficient to take the question of his negligence to the jury.

**8. Master and servant ⬅289(23)—Servant's negligence in failing to inspect scaffold held question for jury.**

Where in an action for injuries to a riveter working on a scaffold, caused by a board, in which there was a knot hole covered by cement, breaking, the evidence was conflicting as to whether iron workers or carpenters should construct the scaffold, and plaintiff did not know of defect, and did not aid in erection of scaffold, plaintiff was not guilty of contributory negligence as a matter of law because he failed to comply with a rule providing that every employee, before going on a scaffold, must see for himself that it is sufficient, and forbidding employee to go thereon until such inspection was made.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**9. Damages ⊚⊸170—That injured plaintiff had a family immaterial.**

In action for personal injuries, offered testimony that plaintiff had a family is properly rejected.

**10. Appeal and error ⊚⊸972—Refusal of court to withdraw from jury because of conduct of counsel not disturbed.**

Court's action in refusing to withdraw case from the jury because counsel insisted in the presence of the jury that he could show that plaintiff had a family will not be disturbed on appeal.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action by John W. Spicer against the Tennessee Coal, Iron & Railroad Company, for damages for personal injuries suffered while in their employment. Judgment for plaintiff, and the defendant appeals. Affirmed.

The following charges are referred to in the opinion as having been refused to the defendant:

(7) If you believe the evidence it was plaintiff's duty, before going upon the scaffold which fell with him, to see for himself that the scaffold and its supports were properly built, and if you believe from the evidence that plaintiff went upon this scaffold without seeing for himself that the scaffold and its supports were properly built, and as a proximate consequence thereof received his injuries, then your verdict must be for the defendant.

(9) If you believe the evidence it was plaintiff's duty not to enter upon the scaffold which fell with him until he satisfied himself by personal examination that the scaffold was safe; and I further charge you that if you believe the evidence plaintiff was himself guilty of negligence by reason of his violation of this duty.

(10) If you believe the evidence, it was plaintiff's duty not to enter upon the scaffold which fell with him until he had first satisfied himself by personal examination that the scaffold was safe; and if you believe from the evidence that plaintiff did enter upon this scaffold without first having satisfied himself by personal examination that the scaffold was safe, and that as proximate consequence of such action on the part of the plaintiff he received the injuries complained of, then your verdict must be for the defendant.

(12) If you believe the evidence, the defendant, at and prior to the time plaintiff received his injuries sued for in this case, had in full force and effect for the government of plaintiff and its other employees the following rule, to wit: "Every employee before going upon any scaffold of any description must see for himself that the scaffold and its supports are properly built. Sufficient time at all times will be allowed to each employee to make this examination. He is forbidden to enter upon any scaffold until he has satisfied himself by personal examination that it is safe." I further charge you as a matter of law that this rule was a reasonable rule, and that if you believe the evidence it was plaintiff's duty to obey this rule; and if you believe from the evidence that as a proximate consequence of plaintiff's violation of this rule he received his injuries, then your verdict must be for the defendant.

(16) If you believe the evidence in this case it was plaintiff's duty, before going upon the scaffold which fell with him to inspect this scaffold; and I charge you that if you believe the evidence in this case plaintiff violated this duty.

The other facts sufficiently appear.

Percy, Benners & Burr, of Birmingham, for appellant.

Cause of action predicated upon defects is not properly brought under subdivision 2 of the Employers' Liability Act. 161 Ala. 397, 49 South. 860; 11 Ala. App. 534, 66 South. 897. A temporary scaffold is not a part of the ways, works, etc. 203 Ala. 450, 83 South. 356. The complaint was not good under subdivision 2. Alabama F. & I. Co. v. Minyard, 88 South. 145. Violation of rule enacted for safety of employee constitutes negligence as matter of law. 90 Ala. 32, 8 South. 55; 171 Ala. 233, 54 South. 566; 177 Ala. 487, 59 South. 264.

Black, Altman & Harris, of Birmingham, for appellee.

The demurrers to count 4 were properly overruled. 159 Ala. 178, 49 South. 302; 138 La. 32, 70 South. 30; 97 Ala. 240, 12 South. 92. Under the facts of the case plaintiff was entitled to recover on count 4. 16 Ala. App. 227, 77 South. 65; Labatt, M. & S. § 1435; Dresser, Em. Liability, 290; 144 Ala. 280, 40 South. 211. Whether there is a negligent violation of a rule is always a jury question. 171 Ala. 216, 55 South. 93; 97 Ala. 211, 12 South. 176; 94 Ala. 545, 10 South. 283.

McCLELLAN, J. The only count submitted to the jury was the fourth. Aside from its formal parts and the description of plaintiff's (appellee's) injuries, it reads:

" * * * The plaintiff was employed by the defendant and was injured while in the discharge of his duties as an employee of the defendant, by falling from or through a scaffold, upon which this plaintiff was working as a riveter, and while he was so working in the service or employment of the defendant as such riveter. Plaintiff further avers that his injuries were proximately caused by the negligence of one, R. H. Bumgardner, who was in the service or employment of the defendant, and who had superintendence intrusted to him, and whilst in the exercise of such superintendence, the said Bumgardner negligently permitted and suffered the said scaffold to be and remain in an unsafe condition, as constructed of defective and unfit material, so that it was dangerous and unfit for the purpose for which it was being used, as a scaffold."

[1-3] The count was designed to state a cause of action under the second subdivision

of our liability act (Code, § 3910). It is a "superintendence" count only; and the sufficiency of its averments is, on demurrer, alone determinable by reference to the exactions of that subdivision. The superintendence attributed to Bumgardner through the averments of this count contemplated his supervision of this scaffold with respect to its safety—a duty that is alleged to have been breached by him in the particulars, or with the results, averred, in proximate consequence of which plaintiff was injured. That such a superintendency may be constituted is not a matter of doubt. It is not different in principle from the supervision recognized in K. C., M. & B. R. R. Co. v. Burton, 97 Ala. 240, 245, 246, 12 South. 88, and S. S. S. & I. Co. v. Holloway, 144 Ala. 280, 284, 286, 40 South. 211; the latter treating the evidence, and not the sufficiency of the complaint on demurrer. See Ala. F. & I. Co. v. Minyard, 88 South. 145,[1] where many approved counts are reproduced. The master may create a superintendent to preserve the master's servants from subjection to dangers incident to their service, to anticipate the possibility of intervening hazards, and to conserve the safety of servants while performing their service. The negligent failure of such a superintendent to perform his duty in the premises may result from an omission to discover and preserve servants from the danger of a "defect in the condition of the ways, works, machinery or plant" within the contemplation of the first subdivision of section 3910; but, if so, the servant injured in proximate consequence of the neglect of such a superintendent to exert proper care and skill to discover the source of danger to servants and to avert the hazard thereof to the servants coming within the sphere of such danger has a cause under the second subdivision of the liability act. In this instance the scaffold in question was not, because of its temporary-character and function, an instrumentality within the definition of subdivision 1 of section 3910.

Under the second subdivision the capacity of a superintendent to be or become negligent is not limited to his positive acts. He may omit the discharge of a duty and thereby be or become negligent; and when he does so he is negligent "while in the exercise of his superintendence." A superintendent's duty defines the bases and limits of his possible neglect; and, if his duty be anticipatory, involving inspection of care that dangers consequent may be avoided of introduction or discovered, and their menace averted, and he omits to discharge such duties, the fault and proximately resulting injury is attributable, under subdivision 2 of section 3910, to his superintendence. The argument for appellant is predicated of the mistaken view that count 4 is an unallowable blending of causes

of action under subdivisions 1 and 2 of section 3910, or that the substance of the right of action sought to be asserted in this count is referable alone to subdivision 1 of section 3910. The only reasonable construction of the count is that accorded it above—that it was designed, and in fact sufficiently states a cause of action under subdivision 2 of section 3910. None of the decisions of this court cited for appellant conclude against the views we have expressed. The Fitzgerald Case, 161 Ala. 397, 49 South. 860, does not do so. There may be language in the opinion of the Court of Appeals, in Birmingham Stove & Co. v. Lawler, 11 Ala. App. 534, 542, 66 South. 897, that is susceptible of an interpretation inconsistent with the conclusions prevailing here; but, if so, it is not binding here, no review in this court having been had of that pronouncement by the Court of Appeals. The argument for appellant would, in our opinion, lead to this result: That no liability could be predicated of the second subdivision of section 3910, if the negligence of the superintendent averred was with respect to a defect in the condition of the ways, works, etc., defined in the first subdivision of the statute. To this result we are not prepared to assent, the superintendence for the breach of the duties of which plaintiff declares being a distinctive duty capable of breach independent of a fault or defect, within, it may be, the definition of subdivision 1.

[4] The count's averments sufficiently refer the scaffold causing plaintiff's injury to the superintendence of Bumgardner, and characterize as negligent his described duty as well as fault with respect thereto. Whether the performance by Bumgardner of the duty alleged would have resulted in Bumgardner's discovery of the unsafety of this scaffold was a matter not required to be averred in the count. There was no error in overruling the demurrer to count 4.

In so far as the averments of count 4 were concerned, there was evidence tending to support its material allegations. The fact of plaintiff's injury was not in dispute. His relation at the time to the master (defendant) was likewise not controverted. The means of his injury was a faulty piece of timber on which the plank floor of the scaffold rested. The faulty timber had a "knot hole" in it, extending nearly through it and so weakening the strength of the piece that it fell under plaintiff's weight. According to phases of the evidence this "knot hole," the fault in the timber, had, before its use in this temporary scaffold, become so covered with cement as to obscure the defect from ordinary observation. The scaffold was not erected by plaintiff, and he was not aware of the presence of the fault in the timber prior to his injury. We will come presently to questions arising out of his asserted negligence in not inspecting the scaffold before mounting it.

---

[1] 205 Ala. 140.

[5-7] The evidence tended to show that Bumgardner was a "superintendent," a "supervisor," and "inspector" of "safety" about and over defendant's (appellant's) plant. With respect to Bumgardner's duties, the witness Alexander testified:

"Mr. Bumgardner was safety inspector for the company at the time. His duties, as I understood them, was to inspect all over the plant for safety and anything which seemed unsafe, and to see that it was made safe. He has nothing to do with the men, no superintendence over them. If he saw men working in a dangerous place, he would notify the foreman and the foreman would have them taken off."

The witness McCurry testified in reference to Bumgardner's functions, duties, and powers as follows:

"I know Mr. Bumgardner the safety inspector. I saw him around there every day or two. He had charge of the men so far as the safety inspections were concerned. Whatever orders or directions were given by him in reference to safety had to be obeyed by the employees working there."

Other quotations from the evidence would be but cumulative of the effect of this evidence as going to warrant the jury in finding that Bumgardner was a "superintendent," within the purview of subdivision 2 of section 3910; that his duties were anticipatory, preservative and conservative in character; and that his failure or omission to prevent, to discover, or to remedy the condition out of which this danger arose was a breach of his duty as superintendent. It could not be affirmed as a matter of law that he did not breach his duty in the premises, or that had he discharged his duty he would not have detected the dangerous fault in this timber. Indeed, it is not shown, in any degree, in the evidence that Bumgardner undertook at any time the inspection of this scaffold, with a view to determining the safety thereof. Generally, whether one has performed a duty to exercise reasonable care, diligence, and skill under certain circumstances is a question for the jury's decision. Grand Trunk Ry. v. Ives, 144 U. S. 417, 421–423, 12 Sup. Ct. 679, 36 L. Ed. 485, the pertinent doctrine of which has been reiterated by this court in Reaves v. Maybank, 193 Ala. 618, 619, 69 South. 137; Birmingham Sou. Ry. v. Harrison, 203 Ala. 291, 82 South. 534, among others. It cannot be pronounced as a matter of law, on the evidence presented in this cause, that Bumgardner was not negligent, or that proper inspection by him would not have discovered the stated fault in the supporting timber, or that reasonable opportunity to inspect it or to correct the fault and avert the danger would not have been afforded by a discharge of the duty indicated. The material issues tendered by the averments of count 4 were for the jury's decision.

[8] In addition to the general issue defendant (appellant) interposed special pleas, setting up, in substance, that it was plaintiff's duty to inspect the scaffold, his breach of this duty, and that he was injured in consequence of his failure to inspect it. Other special pleas also charged plaintiff with contributory negligence because of his failure to observe the following rule:

"Every employee before going upon any scaffold of any description must see for himself that the scaffold and its supports are properly built. Sufficient time at all times will be allowed to each employee to make this examination. He is forbidden to enter upon any scaffold until he has satisfied himself by such personal examination that it is safe."

The court instructed the jury at defendant's request that the rule was reasonable; that it was plaintiff's duty to observe the rule; and that it was plaintiff's duty before going on the scaffold to make a personal examination as to the safety of the scaffold; but the court declined to instruct the jury, through requests of defendant, that as a matter of law plaintiff violated the rule, or that he was concluded as a matter of law by his failure to inspect, to personally examine, the scaffold to ascertain its safety.

The evidence was in conflict as to whose duty it was, the iron workers or the carpenters—the plaintiff being of the former class—to build these scaffolds. It is quite clear that the plaintiff did not aid in its erection, and also that he did not in fact know of the faulty timber supporting its flooring. The rule is prohibitory in terms and effect. It was designed to assure the safety of employees using scaffolds like this, exacting a personal examination by an employee who intended to use the scaffold before he should go upon it. This was the basic view of the instruction given on this phase of the case; and in so advising the jury the court appears to have soundly concluded. But from the premise thus afforded it could not be further declared as a matter of law either that plaintiff was guilty of contributory negligence in going upon the scaffold without first giving it a personal examination that operated or would necessarily operate to bar his recovery under count 4, even if it is accepted that he knew of the rule's requirements at the time.

The rule quoted above does not in terms undertake to define the measure or the extent of the personal examination required. It cannot be interpreted as imposing upon the employee the duty of assuring his own safety. Dresser's Employers' Liability, pp. 146–149, citing earlier pertinent decisions of this court. Aside from the general language of the rule there was evidence, particularly that of the witness Alexander (cross-examination), that tended to invite the conclusion that the inspection contemplated by the rule and regarded in practice in the plant was a general over-

looking of the scaffold structure, not a "minute" examination of the elements that went to make up the scaffold. This evidence served, in a view, to explain the rule, not to contradict it. If this was the rule's design, then it was open to the jury to find that plaintiff's failure to inspect or to examine did not involve a breach of the rule, since the fault in the supporting timber was obscured by the coating of set concrete, and it could not be affirmed as a legal result that a general, not minute, overlooking of the structure would have discovered the hidden imperfection that made the scaffold dangerous. These considerations, if not others, justified the court in refusing special charges 7, 9, 10, 12, and 16. On the whole case the material issues were due to be submitted to the jury; and this course the court observed.

[9, 10] The court properly excluded, on defendant's objection, the proffered evidence that plaintiff had a family. L. & N. R. R. Co. v. Binion, 107 Ala. 645, 18 South. 75. But the fact that plaintiff's counsel ineffectually insisted to the court, but in the presence of the jury, that such inadmissible matter was admissible, does not justify this court in holding for error the .action of the trial court in denying defendant's motion to withdraw the case from the jury.

No error appearing, the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.