(94 South. 532)

## CORONA COAL CO. v. DAVIS. (6 Div. 688.)

(Supreme Court of Alabama. Oct. 26, 1922.)

**1. Master and servant ⬤═265(4)—Burden on plaintiff to show hoisting contrivance part of ways, works, machinery, or plant.**

In an action, under Code 1907, § 3910, subd. 1, as amended by Gen. Acts 1911, p. 485, against a coal company constructing a tipple for injury averred to have been caused by defect in the "ways, works, machinery, or plant" connected with the business of defendant, the defect being averred to be in not sufficiently bracing or nailing timbers used for hoisting timbers from the ground, the burden was on plaintiff to show the lifting contrivance to be a part of the ways, works, machinery, or plant.

**2. Master and servant ⬤═117 — Temporary hoisting boom not part of "ways, works, machinery, or plant."**

A boom or gin pole consisting of timbers fastened to the top of a coal mine trestle or tipple and put up temporarily for use with a block and tackle to hoist timbers to be used in constructing the tipple held not a part of the master's "ways, works, machinery, or plant" connected with or used in his business, within Code 1907, § 3910, subd. 1, as amended by Gen. Acts 1911, p. 485.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Ways, Works, Machinery, or Plant.]

**3. Appeal and error ⬤═1062(1)—Submitting case on count unsupported by evidence reversible error.**

Where complaint in an action for injury to an employé contained a count for injury caused by reason of defect in the ways, works, machinery, or plant connected with the master's business, and a count on alleged negligence of defendant's superintendent, both being submitted to the jury, which returned a general verdict for plaintiff, error in submitting the case under the defect count for want of evidence to support it requires reversal of judgment for plaintiff; it being impossible to tell under which count the verdict was based.

Appeal from Circuit Court, Walker County; J. J. Curtis, Judge.

Action for damages by John S. Davis against the Corona Coal Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

A. F. Fite, of Jasper, for appellant.

A mere temporary device, intended for use only for the time being is not a part of the ways, works, etc.; and there being no evidence to support count 1, defendant's requested charges should have been given. 145 La. 1066, 83 South. 256; 16 Ala. App. 227, 77 South. 65; 206 Ala. 141, 89 South. 293. The refusal to give charges 2, 5, and 6 at defendant's request was not error without injury. 197 Ala. 361, 72 South. 542; 198 Ala. 528, 78 South. 907; 188 Ala. 337, 66 South. 85.

Ray & Cooner, of Jasper, for appellee.

The term "plant" comprises whatever apparatus, fixtures, or tools a master uses in his business. Dresser, 48; 139 Ala. 425, 36 South. 181; 141 Ala. 537, 37 South. 784; 163 Ala. 244, 50 South. 926; 166 Ala. 471, 52 South. 35; 170 Ala. 559, 54 South. 525; 8 Ala. App. 630, 62 South. 969; 143 Ala. 603, 42 South. 73, 5 Ann. Cas. 709; 198 Ala. 346, 73 South. 516.

MILLER, J. This case is appealed from a judgment rendered by the court on a verdict of the jury in favor of John S. Davis and against the Corona Coal Company. The plaintiff, appellee, John S. Davis, claimed damages of the defendant for injuries in two counts, which were submitted to the jury. They were counts 1 and 5. Count 1 claimed damages for an injury averred to have been caused "by reason of a defect in the condition in the ways, works, machinery, or plant connected with or used in the business of the defendant"; and count 5 placed his cause of action upon alleged negligence of a superintendent of the defendant.

Written charges asked by the plaintiff and given by the court and written charges requested by the defendant and refused by the court are the only errors assigned that are insisted upon by the appellant.

These three charges are in writing; the appellant requested the court to give each of them separately to the jury; the court refused to give either of them; and they read as follows:

Charge No. 2: "If you believe the evidence, plaintiff is not entitled to recover under count one of the complaint."

Charge No. 5: "I charge you that, if you believe the evidence, the timber which gave away was not a part of the ways, works, machinery, or plant connected with or used in the business of defendant."

Charge No. 6: "I charge you that, under the evidence in this case, the plaintiff's injury was

not caused by reason of a defect in the condition of the ways, works, machinery, or plant connected with or used in the business of the defendant."

Count 1, at which these charges were directed, was drawn under subdivision 1 of section 3910 of the Code of 1907 as amended Gen. Acts 1911, p. 485; and the material part of this count to be considered under those refused charges and the evidence reads as follows:

"And plaintiff alleges that his said injuries and damages were caused by reason of a defect in the condition in the ways, works, machinery, or plant connected with or used in the business of the defendant, and in this: The contrivance or timbers which defendant had rigged or fitted up for lifting timbers from the ground onto the trestle was defective, not sufficiently braced or nailed to carry the weights or to do the work required of it, and it fell on plaintiff, precipitating him to the ground and injuring him as aforesaid."

The plaintiff was an employé of the defendant. He was working for the defendant in the construction of a trestle or tipple when injured. "Certain timbers above him fell," which struck him or precipitated him to the ground, about 32 feet from where he was working. It was a trestle or tipple to carry coal from the mines to the washers. Where he was there was nothing but the stringers. The stringers were large heavy pieces of wood placed on each side of the tipple. The stringers were supported by framework or beams from the ground. The day before the injury two pieces of timber, one 2x6 or 2x4 or 2x8 inches and about 16 feet long, were fastened with No. 10 or 20, or both, nails to the stringers or timber of the trestle, and it was braced by a piece of timber about 3x6 or 3x8 inches and about 6 feet long, being nailed to it, and then nailed to timbers of the trestle. They were thus fixed above the trestle. A pulley was placed on the high end of one of these pieces and was attached by rope with a pulley near the ground. Ties, timbers, about 6x6x8 inches and about 6 feet long were raised from the ground to the top of the trestle by being fastened to the rope and mules pulled them from the ground to the top of the trestle. The plaintiff was engaged in landing these ties as they were pulled from the ground. The ties were to be laid across the tipple from one stringer to the other. Five or six ties were fastened to the rope and as they were being pulled to the top of the trestle or tipple these two pieces of timber or plank on which the pulley was attached gave way, the nails fastening them pulled out, and it fell on plaintiff precipitating him to the ground and injuring him. This long piece of timber is called by the witnesses a boom or gin pole.

In this count plaintiff alleges "a defect in the condition in the ways, works, machinery, or plant connected with or used in the business of the defendant and in this: The contrivance or timbers which defendant had rigged or fitted up for lifting timbers from the ground onto the trestle was defective, not sufficiently braced or nailed to carry the weight or to do the work required of it." The defect was not averred to be in the rope or the pulley or block and tackle, but it was averred to be in not sufficiently bracing or nailing the contrivance or timber to carry the weight of timbers to be lifted from the ground.

[1] The evidence tends to show these two pieces of timber were not sufficiently braced or nailed to carry the weight of the ties or to do the work required of it, lifting the ties. But were these two pieces of timber as nailed and used on the occasion of plaintiff's injury a part of the ways, works, machinery, or plant connected with or used in the business of the defendant? This is the first and real question in the case under this count. The plaintiff in this count alleges they were. This places on him that burden of proof; there being on file a plea of general issue to that count by the defendant. Alexander v. W. O. W., 161 Ala. 561, headnote 6, 49 South. 883.

[2] Is there any evidence to sustain the allegations? We think not. One witness for plaintiff testified on this subject:

"I think the gin pole was put up the day before, but it was not used that day. The best I remember the gin pole was a piece of timber about 2x6. * * * The timber that fell is called a boom or gin pole, a gin pole most of the time. It was not a part of the trestle they were building. It was only fastened to the top of the trestle and was put up temporarily to lift the ties. They put this one up in the center of the trestle, and it was put up simply for the purpose of raising ties to the top of the trestle and was put wherever it was most convenient, where the ties were raised."

Another witness for plaintiff said on this subject:

"The gin pole was fastened to the tipple by being spiked to the tipple cord and was spiked onto a little piece of 2x6 or 2x4 just nailed onto the side of it. Where it was spiked to the top of the tipple it was about 4 feet higher, and the gin pole, I believe, was nailed to the tipple cord to an upright piece 2x6 and stuck out over there something like 5 or 6 feet. The gin pole was about 14 or 15 feet long, and my recollection is that it was 2x6. It was about 5 or 6 feet from the second fasten to the end. This little post right here [indicating on diagram] that held this pole up that the hoist was fastened to was setting on the cap between the two stringers."

Another witness for plaintiff said:

"The boom had just been put up that morning. John Moore, John Belk, and myself put this pole up there. At the lower end we fastened it to the sills of the trestle. We nailed it with some tenpenny nails and some twenty's. The pole was 2x6, I think, 12 or 14 feet long."

Another witness for plaintiff testified as follows:

"I put the gin pole up the day before. We put up a 2x4, something like that, and then a 2x6 like this, and it broke loose out on the end of that. It was fastened with twentypenny nails. At the second place we fastened it on we used 2x4 for an upright piece. That upright piece was 6 feet, I guess. It was braced. It fell straight down; the twentypenny nails pulled out."

One witness for defendant testified on this subject:

"We had a boom put on a piece that came up from the cord or cap and came across another timber and then hung over and the blocks was hung on this practically in the center. The ties were raised by a block and tackle on the end of that boom. * * * I think the boom was 3x6 or 4x6 or may be 3x8, and it was put up with the long side up and down fastened to the tipple cords or stringers at the lower end and supported in the center by timbers and braces."

This evidence gives the kind, nature, and use of the two timbers.

In Tenn. C., I. & R. Co. v. Spicer, 206 Ala. 141, 89 South. 293, this court declared:

"In this instance the scaffold in question was not, because of its temporary character and function, an instrumentality within the definition of subdivision 1 of section 3910."

Again this court in Gulf States Steel Co. v. Jones, 203 Ala. 450, 83 South. 356, declared the law applicable to the facts in regard to count 1 in this case, as follows:

"It was never the object or purpose of this provision of the statute to embrace or include mere temporary structures, used merely in the construction or erection of the master's plant or business. In fact, the language used precludes a construction which would include such structure as a mere temporary scaffold on which workmen stood only while building a brick wall, which wall, when constructed, would become a part of the ways, works, plant, etc. There may be liability of the master for the injury suffered in this case, but it is not possible for the liability to be under the first subdivision of the Employers' Liability Act, because the undisputed evidence shows the temporary platform not to be a part of the master's works, ways, machinery, plant, etc., within the meaning of the statute. * * *

"While it has been held by this court in the cases cited above, and we do not desire to depart therefrom, that a ladder used by a master in the pursuit of his business as a contractor, engaged in the construction of a building, is a part of such contractor's plant, yet it does not follow that a mere temporary device, intended for use only for the time being, is a part of the plant, 'connected with or used in the business of the defendant.' The fact that the staging or scaffolding is permanent or temporary makes all the difference—in the one case it is a part of the ways, works, or plant; in the other it is not. This is well pointed out by Mr. Dresser in his valuable work on Employers' Liability. In volume 1, § 46, p. 227, he says:

"'It has been noted that buildings in process of construction or destruction are not a part of the builder's "works." The stagings and scaffolds which are erected from time to time are not part of the "works" unless they are of permanent nature and used for other purposes than the particular one for which they are built. * * *

"'Under the act a temporary staging erected by the workmen themselves for the immediate purpose is not a part of the master's works. Nor would it seem that a staging erected by the master himself for a temporary purpose comes within the act. Where, however, the staging acquires such a degree of permanence that it is a means of carrying on the business, and not merely an incident in the accomplishment of a particular work, it becomes a part of the ways.'

"Mr. Dresser thus formulates the rule as construing this subdivision of the Employers' Liability Act as to defects, permanent and temporary. He says: 'Defect in condition refers to the permanent or quasi permanent condition of the ways, works, or machinery. An accident or temporary condition does not come within the meaning of the act.'"

These two pieces of timber were nailed to the trestle and fastened with nails to each other, one as a brace to the other, on the day of or on the day before the injury. There was no evidence that these two pieces of timber had been used or ever would be used again at any other place for that or another purpose. It appears from the evidence they were temporary devices, a scaffold on which to hang the block and tackle, made and used only for the time being to hang the block and tackle on; to raise from the ground ties for the trestle at that place. When the ties were drawn up, placed in position, and the rails laid on them, these two timbers would have to be removed before the cars with coal from the mine could move on the trestle to the washer. This block and tackle scaffold or device to aid in hoisting ties made of these two timbers was temporary, and not permanent, in its nature, location, use, and purpose.

The defendant's business of transporting coal from its mine to this washer would be interfered with by these two pieces of timber as located on top of the trestle unless removed. Under the undisputed evidence these two pieces of timber, as and where used, when the injury occurred, under the rule in Gulf States Steel Co. v. Jones, 203 Ala. 450, 83 South. 356, were not a part of the ways, works, machinery or plant connected with or used in the business of the defendant, because of their temporary character and function; they were a mere temporary structure or device used to aid temporarily in the construction of a part of the defendant's plant at that place.

These written charges numbered 2, 5, and 6 requested by the defendant should have been given by the court.

[3] Counts 1 and 5 were submitted to the jury by the court in its oral charge under

the evidence for their consideration. They returned a general verdict in favor of the plaintiff. We cannot tell under which count the verdict was based. We cannot say it was error without injury to refuse those charges. The court erred in submitting the case under the evidence to them under count 1, for which the judgment must be reversed. Langhorne v. Simington, 188 Ala. 337, headnote 8, 66 South. 85.

There are other errors assigned and insisted on by appellant, arising under count 5 as well as count 1; but, as the judgment must be reversed, we do not consider it necessary to discuss them, as they may not arise on another trial; if they do, no doubt they will be presented in a different form.

For the errors mentioned, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.